Shane et ux., *v.* Hoffmann, et al., Appellants.

Argued November 16, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

Before McLEAN, JR., J., without a jury.

*William F. Donatelli,* for appellant at No. 431.

*Andrew M. Schifino,* for appellant at No. 471.

*Richard F. Pohl,* with him *Cauley, Birsic & Conflenti,* for appellee.

OPINION BY HOFFMAN, J., April 3, 1974:

This is an appeal from an order of a court en banc denying appellants' post-trial motions following a judg-

ment by the trial court, sitting without a jury, in favor of the plaintiffs-appellees.

The appellant, Catherine E. Hensch, owned a residence located at 313 Taylor Street in Pittsburgh. In 1966, she rented the property to Victor Depofi, who lived at said residence until June, 1970. Sometime prior to June, the appellant listed the property for sale with the C. J. Hoffmann Agency, an appellant herein. During the next few months, James F. Hoffmann, who was employed as a salesman for the agency, showed the property to some 40-50 prospective purchasers. In the fall of 1970, after Depofi had moved out and the property was vacant, Hoffmann showed the appellees the property on three separate occasions. On November 13, 1970, the appellees, in the presence of Mrs. Hensch, James F. Hoffmann and the agency's attorney, concluded settlement of the property.

Approximately a month later, the sewer in the basement of the property backed up, flooding the basement with sewage. At a cost of $2,410.00, the appellees had the basement drained and the sewer repaired. The appellees then instituted suit against the appellants alleging fraud and misrepresentation in the inducement of the real estate contract. After a trial before the Honorable John J. McLEAN, JR., sitting without a jury, a verdict was entered in favor of the appellees in the amount of $2,410.00. Post-trial motions were denied by a court en banc, and this appeal followed.

The evidence adduced at trial may be summarized as follows: Mr. and Mrs. Shane testified that they were shown the property while it was vacant. In the course of their visits, they noticed an unusual uncemented portion in the back of the basement. As the sewer lines were located in the rear of the residence, they asked Mr. Hoffmann whether the sewer was in good working order. Mr. Hoffmann responded that it was in good condition and that he had no knowledge of any

problem. Mrs. Shane further said that upon meeting Mrs. Hensch, the owner, for the first time at closing, she asked whether there would be any problem in washing clothes on the second floor. She said that she was concerned about the possibility of improper drainage. Mrs. Hensch assured Mrs. Shane that there was nothing that would impede such activity. The Shanes testified that flooding was caused by a sewage back-up and that the basement was filled with slime, human excrement and toilet paper. Frank A. Dodaro, the plumber who was called after the flooding occurred, testified that the substance in the basement was sewage, and that the drainage and repair to the system cost $2,410.00.

The plaintiffs called Victor Depofi as a witness. Mr. Depofi, who had been the tenant for approximately four years prior to the sale of the property to the Shanes, testified that on numerous occasions sewage, containing human excrement, had flooded his basement. He said that each time he called Mrs. Hensch, she sent over her son-in-law who drained the basement with a pump or other equipment that he rented. He testified that he called the Health Department on several occasions and authorities inspected the basement and cited the owner with an order to effect "waterproofing". After waterproofing was effected, health authorities removed the citation, ignorant of any defect in the sewer system.[1]

Mrs. Hensch and Mr. Hoffmann corroborated the statements and conversations with the plaintiffs prior

---

[1] Records from the Health Department indicate only a problem of "water seepage". Each inspection, however, had been conducted after drainage. While the defense elicited an admission from the appellees that FHA inspectors had come to the property prior to closing, Mrs. Hensch testified that such an "inspection" involved an appraisal of the structure without a close examination of wires, pipes or sewer lines.

to the purchase of the property. Each, however, denied knowledge of a problem in the sewer system or the existence of incidents wherein flooding occurred in the basement of the property. Mrs. Hensch admitted that there had been "water seepage" prior to April, 1970, but that that condition had been alleviated after the Health authorities had ordered "waterproofing" measures. Despite the fact that Depofi testified that he had spoken to Mr. Hoffmann during his numerous visits about the incidents involving the flooding of the basement with sewage, and despite Mr. Depofi's assertion that he moved from the premises, partly because of the hazardous and offensive condition of the residence due to the defective sewer, both appellants denied notice of said condition and any conversation with Depofi with regard to same.

On the basis of the evidence before the Court, the trial judge resolved the conflict in the testimony in favor of the appellees, and determined that there was sufficient evidence that the defendants were liable for damages to the appellees as a result of fraud and misrepresentation. We affirm the lower court decision.

It is well-settled that one who fraudulently makes a misrepresentation of fact or law for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused him by his justifiable reliance upon the misrepresentation. *Savitz v. Weinstein,* 395 Pa. 173, 178, 149 A. 2d 110 (1959). To be actionable, the misrepresentation need not be in the form of a positive assertion. As our Supreme Court said in *McClellan Estate,* 365 Pa. 401, 407, 75 A. 2d 595 (1950) : ". . . fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture.

It is any artifice by which a person is deceived to his disadvantage." [Citing *Reichert Estate,* 356 Pa. 269, 274, 51 A. 2d 615 (1947).]

The elements of a fraud and deceit action in trespass may be said to consist of: (1) a false representation of an existing fact, *Fidurski v. Hammill,* 328 Pa. 1, 195 A. 2d 3 (1937); (2) if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved; while, if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action, *DeJoseph v. Zambelli,* 392 Pa. 24, 139 A. 2d 644, affirming 11 Pa. D. & C. 2d 447 (1958); (3) scienter, which may be either actual knowledge of the truth or falsity of the representation, reckless ignorance of the falsity of the matter, or mere false information where a duty to know is imposed on a person by reason of special circumstances (16 P.L.E., Fraud §§7, 4) reliance, which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and, (5) damage to the person relying thereon.

In the instant case, we, as the reviewing court, must resolve the evidence in the light most favorable to the verdict winner, and where evidence is based on the testimony of witnesses it is for the trier of fact to determine questions of credibility. See, *Costello v. Fusco,* 191 Pa. Superior Ct. 641, 643, 159 A. 2d 73 (1960). While the real estate broker-salesman denied knowledge of a prior or existing condition in the sewer system, the testimony of the tenant, Depofi, contradicts his alleged ignorance. If said testimony is to be believed, the representation which the agent admits to have made in response to a direct question as to the condition of the sewer system was fraudulent and calculated to deceive. Certainly, a defective sewer, which could inundate the residence with hazardous and odious

waste material, was a factor which was material to the prospective purchaser of land. The property was vacant, and as the agent was the only person with whom they had direct dealing, their reliance on his representations was justifiable, and the resultant harm just two weeks after possession was causally related.

A number of jurisdictions have held that where a broker employed to sell property misrepresents or conceals a material fact he is liable to the purchaser in damages. See, e.g., *Bond & Share Trading Corp. v. Insuranshares Corporation of Delaware*, 40 F. Supp. 324 (D.C.N.Y. 1941); *Whipple v. Haberle*, 36 Cal. Rptr. 9, 223 Cal. App. 2d 477 (1963); *Robson Link & Co. v. Leedy Wheeler & Co.*, 18 So. 2d 523 (Fla. 1944); *Saunders v. Martin*, 390 S.W. 2d 513 (Tex. 1965); generally, 12 C.J.S., Brokers §146. Under the circumstances, we hold that the Agency and its salesman are liable for damages to the purchasers-appellees who relied on representations made by them regarding the condition of the sewer system, the true condition being known at the time the representations were made.

Although the general rule is that a principal is liable for his agent's misrepresentations made within the scope of his authority even though amounting to fraud and deceit,[2] Pennsylvania has not followed this rule. This Court has held that proof of scienter on the part of the principal at the time of the misrepresentation is an essential element to hold the principal on fraud and deceit practiced by his agent. *Littler v. Dunbar*, 166 Pa. Superior Ct. 271, 273-4, 70 A. 2d 365 rev'd on other grounds, 365 Pa. 277 (1950). A principal is not, therefore, liable for his agent's false representations where he has not authorized nor participated in them nor knowingly permitted the agent to make them. The innocent purchaser may, nevertheless, res-

---

[2] See, Restatement of Agency, §§257 and 258; Am. Jur., Agency §362.

cind and recover any part of the consideration received from the innocent purchaser. *Littler,* supra. Mrs. Hensch employed the Hoffmann Agency to handle the sale of her property. She entrusted the entire matter to the agency and stayed out of all negotiations, merely appearing at the closing settlement to sign the appropriate papers. The record establishes that Mrs. Hensch was fully aware of the condition in the sewer system, and had been personally notified of previous flooding in the basement of the residence. Despite the fact that Mrs. Hensch refrained from making any direct misrepresentation in this matter, she is fully responsible for the acts and representations of her selling agents, who were authorized to discuss the condition of the residence in every detail.

We further note that Mrs. Hensch, in response to a question at closing concerning the draining capacity throughout the house, said nothing about a problem, which according to Depofi's testimony, was known to exist. While mere silence is not usually actionable, and while the doctrine of *caveat emptor* may sometimes apply to prevent action on an undisclosed problem existing at the time of a sale or transaction, such is not the case where the law recognizes a duty to disclose.

The Restatement of Torts, 2d, §353, describes those circumstances where such a duty to disclose exists upon the vendor:

"§353. Undisclosed Dangerous Conditions Known to Vendor

"(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

"(a) the vendee does not know or have reason to know of the condition or the risk involved, and

"(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

"(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

Many jurisdictions have adopted and cited with approval this section of the Restatement, recognizing a duty to disclose any dangerous condition to life, limb or to the general health or safety of the purchaser and his family. *Mercer v. United States,* 432 F. 2d 87, 88 (3d Cir. 1970) ; *Louisville & Jefferson Co. M.S.D. v. City of Louisville,* 451 S.W. 2d 172, 175 (Ky. 1970) ; *Carlson v. Hampl,* 169 N.W. 2d 56, 58 (Minn. 1969) ; *Sweeney v. Stone,* 265 Cal. App. 2d 693 (1968) ; *Hut v. Antonio,* 229 A. 2d 823, 826 (N.J. Super. 1967) ; *Reckert v. Roco Petroleum Corp.,* 411 S.W. 2d 199, 205 (Mo. 1966). In this jurisdiction, the courts have long recognized a duty to disclose conditions which are dangerous to the purchaser or other persons using the property of another. In *DeJoseph v. Zambelli,* supra, our Supreme Court in a Per Curiam Opinion, upheld a finding of liability on the vendor of a property who failed to disclose a termite infestation at the time he transferred property to the purchaser. Because this failure to disclose was a breach of a duty to make known any condition which involved the safe construction and maintenance of the building, and because said condition was a material factor to be considered in the transaction, the vendor was liable to the purchaser for

his damages therefrom. There was evidence in the instant case that a prior tenant moved out of the premises because of the condition of the sewer. Furthermore, the appellees testified that the condition was so bad that their baby had to be kept from the residence for a period of three months while the odious and hazardous condition could be rectified. The inundation of the basement with human excrement and other waste material involves such a clear hazard to the health of the occupants of this residence, that the duty to disclose said condition is evident, either by reason of the Restatement Rule or by well-settled common law principles.

The order and judgment of the court are affirmed.