## Mongelluzzo v. Della Toffalo

*Neal R. Cramer,* for plaintiffs.

*Dennis G. Fritsch,* for defendants Anthony J. Della Toffalo and Janet Della Toffalo.

*Michael J. Fines,* for additional defendant Aarco Realty Inc.

*James P. Sommers,* for additional defendant Merrill Lynch Realty, Hammill-Quinlan.

TERPUTAC, *J.,* July 21, 1986 — Plaintiffs, Joseph Mongelluzzo and Camille Mongelluzzo, his wife, filed a complaint in equity and later an amended complaint against defendants, Anthony J. Della Toffalo and Janet Della Toffalo, his wife, and Kissell Co. Alleging that defendants were guilty of fraudulent representations, plaintiffs have demanded rescission of the real estate transaction, cancellation

of the deed, and damages. Aarco Realty Inc., was joined as an additional defendant by the original defendants, Anthony Della Toffalo and Janet Della Toffalo. It is the contention of the Della Toffalos that Aarco Realty breached its duty to them by failing to disclose to plaintiffs that the source of water for the house was a spring located off the property and not a well located on the property. Aarco Realty then joined Merrill Lynch Realty, Hammill-Quinlan as an additional defendant alleging that if any misrepresentations were made, such misrepresentations were made by Merrill Lynch Realty or its agents.

During the trial the court dismissed Kissell Co., with whom plaintiffs had a mortgage agreement. The liability of the remaining defendants, Aarco Realty and Merrill Lynch Realty, is still in issue. After considering the record, the oral arguments, and the briefs, the court hands down its decision in favor of plaintiffs and against the original defendants, the Della Toffalos, in the amount of $3,635. In addition, we hold that Aarco Realty is liable to the original defendants, the Della Toffalos, for breach of its contractual duty to them, and that Merrill Lynch is not liable to anyone for damages. Except as otherwise noted herein, we resolve matters of credibility and weight of the evidence in favor of plaintiffs and Merrill Lynch Realty.

## ISSUES

The issues in this case are as follows. First, are plaintiffs entitled to rescission of the real estate transaction, cancellation of the deed, and damages? Second, if plaintiffs are not entitled to rescission, should they recover damages for the diminution in value of their property or damages for their ex-

penses to secure a system sufficient to provide an adequate supply of water? Third, are any of the realty companies subject to liability?

## FACTS

This controversy arises from the sale of a house and lot by the original defendants, the Della Toffalos, to plaintiffs. The property is located in a rural area of Cecil Township, Washington County. In June 1982 Merrill Lynch Realty entered into a listing agreement with the Della Toffalos. Mr. Della Toffalo told Kathleen McKenna, a realtor associate for Merrill Lynch Realty, that the source of water for the house was a well and that there also was a spring. No one told Ms. McKenna that the exclusive source of water was a spring. We also find that no one told Fritzi Blaustein, a realtor for Merrill Lynch Realty, that the source of water was a spring. No one asked Merrill Lynch to conduct an inspection of the property nor to ascertain the source of water. Mrs. Della Toffalo had handed to Ms. McKenna a copy of a listing contract between Alexander Penny Real Estate and the persons who owned the property before Mr. and Mrs. Della Toffalo; this copy showed that the supply of water to the house was a well. The Della Toffalos did not inform any of the Merrill Lynch Realty agents that the well was not actually connected to the house and further did not inform them that the spring was not located on the property to be sold.

The information supplied by the Della Toffalos was put into the West Penn Multilist Computer Data Base. On September 11, 1982, the Della Toffalos terminated their listing contract with Merrill Lynch Realty and retained Aarco Realty as their listing agent. As to Merrill Lynch Realty, therefore, the court finds that this firm made no

representations to plaintiffs about the source of water or its condition, and plaintiffs did not rely upon Merrill Lynch Realty to supply them with such information.

In finding the decision of the court in favor of plaintiffs, we rely on their testimony to establish that particular data concerning not only the source of water but also its adequacy was concealed from them by the original defendants. The first time that plaintiffs looked at the property was in October 1982. They noticed that the computer printout, plaintiffs' Exhibit 1, showed a septic tank and well water. On the second time Mr. Della Toffalo told them there was a well. Asked whether there was any trouble with the water, Mr. Della Toffalo said there was none. Before the property transaction was consummated on January 28, 1983, no one ever told plaintiffs that the source of water for the house was a spring and that it was located about 200 yards off the property. After the sale and after plaintiffs had occupied the house, they were completely without water within one month. It was at this time that they learned the well was not connected to the house. They continued to suffer problems and expenses as the result of an inadequate water supply. Even to the time of trial, though another well had been dug and repairs to the spring pipe had been made, plaintiffs still have an insufficient supply of water.

When the listing agreement with Aarco Realty was made, the Della Toffalos gave correct information about the water source. The Aarco agents were told that the spring was the source of water. Aarco Realty's sign was on the property when plaintiffs first viewed it. Although the date is disputed, we find that this listing with the Della Toffalos predated plaintiffs' initial view of the property. Moreover, de-

fendants specifically asked Aarco Realty's agents to convey the information about the water supply to plaintiffs, but the firm failed to do so. As the agent for the Della Toffalos, Aarco Realty owed them the contractual duty not only to prepare an accurate listing but also to insure that such accurate information as may be required in a sale be provided to the buyers and other realtors. Holding that the breach of duty relates to the contract between Aarco Realty and the Della Toffalos, the amount of damages should not be the full amount awarded to plaintiffs. Owing to the fact that the culpable misrepresentations by plaintiffs cannot be shifted entirely to others, the damages in favor of the Della Toffalos from Aarco Realty ought to be $1,817.50. Neither contribution nor indemnity is applicable, and therefore all other claims of the Della Toffalos against Aarco Realty are dismissed.

Throughout this case the testimony has been conflicting, both as to the inconsistency of the events related by the parties themselves and the conflicts among the parties. Mrs. Della Toffalo testified on direct examination that they never had a problem concerning the inadequacy of water, but on cross-examination she admitted at times the water was not coming into the house in sufficient quantity. She also admitted she did not tell Merrill Lynch agents that the listing was incorrect. When she was asked why the sellers did not say something about the water at the closing or had never informed the buyers about it, she replied: "This is done through the agents." Mr. Della Toffalo admitted that they had three interruptions of water supply after they moved in, each for a period of one or one and a half days. If he were so concerned that the buyers should know about the source of the water and the inadequacy of the supply, why did he not

tell the buyers about it before the closing? It is not enough for him to say he had relied upon Aarco Realty. When the buyers were viewing the property, the Della Toffalos knew that the Alexander Penny listing contained a notation about well water and that the information was incorrect. A prospective buyer coming on the property could see the well cap in the yard, an implication that the source of water was the well. And the fact that there was no visible indication that a spring located 200 yards away was the actual source of water is further proof that the sellers engaged in concealment.

## DISCUSSION OF LAW

In their complaint plaintiffs requested that the court grant them the remedy of rescission of the transaction and cancellation of the deed. Ordinarily a deed which otherwise is valid cannot be impugned by either total or partial failure of consideration. *Bruno v. Bruno*, 404 Pa. 502, 172 A.2d 863 (1961), *Yuhas v. Schmidt*, 434 Pa. 447, 258 A.2d 616 (1969). Even though plaintiffs did not actively pursue this relief during the trial, we hold that in any event the evidence produced by plaintiffs is insufficient to allow them to rescind. That kind of deceit or fraudulent misrepresentation upon which plaintiffs may be entitled to rescission has not been proved. *Savitz v. Weinstein*, 395 Pa. 173, 149 A.2d 110 (1959). The claim for rescission is therefore dismissed.

The traditional view in transactions involving the sale of real property was that the buyer beware—the doctrine of caveat emptor. This doctrine gradually became eroded and the courts allowed recovery in cases of deceit amounting to deliberate misrepresentations and active concealment. The modern

view is that where there is a serious, dangerous defect known to the seller, he must disclose such a defect to the unknowing buyer or suffer liability for his failure to do so. *Quashnock v. Frost,* 299 Pa. Super. 9, 445 A.2d 121 (1982). But the *Quashnock* line of cases stand for the proposition that the duty of disclosure can be employed to impose liability only when the defect is serious and dangerous. *Shane v. Hoffmann,* 227 Pa. Super. 176, 324 A.2d 532 (1974). The inquiry in this line of cases is this: What is serious and dangerous? The Superior Court held in *Quashnock* that *termite* infestation which could involve the structure of the house, was serious and dangerous; and in *Shane* it held that a backed-up sewer inundating the basement with excrement and other waste material was serious and dangerous, involving problems of the health of the buyers. The foundation of this line of cases, it seems to us, is that plaintiffs must prove a hazard to the health or safety of the occupants in order to bring their case within the principle allowing recovery for a serious and dangerous defect.

There is no question in the instant case that the water is potable. What has been proved by plaintiffs is that the water supply is insufficient and at times it has an odor and some sediment. These facts do not constitute a serious and dangerous defect. No one ever became ill from the water. On this principle plaintiffs cannot recover.

This analysis, however, does not end the inquiry. Mr. Della Toffalo testified that while he and his wife resided in the house, they had encountered an inadequate water supply on three occasions. They knew that water supply and its source would be of material concern to a prospective buyer. They informed an Aarco Realty agent about the source of water, but the agent did not tell plaintiffs. In addition the Della

Toffalos knew the Alexander Penny listing incorrectly listed the source of water as a well. Under these circumstances we hold that the sellers engaged in deliberate non-disclosure of a material fact amounting to culpable misrepresentation. This concealment was material to the transaction so that the sellers are liable to damages to plaintiffs who relied upon the information provided to them and facts withheld from them when they decided to purchase the house. *Neuman v. Corn Exchange National Bank & Trust Co.*, 356 Pa. 442, 51 A.2d 759 (1947).

A case in point is *Musser v. Shenk,* 192 Pa. Super. 471, 161 A.2d 628 (1960), in which the court held that the sellers of a house in a rural area were subject to liability to the buyers. There the sellers knew that the supply of water was inadequate. When they were asked by the buyers about the water, the sellers replied that the water supply would meet the normal use that a family might need for purposes of bathing, laundry, cooking and drinking. Holding that the verdict in favor of the purchasers was warranted, the court stated:

"Even in the absence of fraud, we believe the misrepresentation here made to be actionable. Had appellees known about the actual flow of water per minute, it is unlikely that they would have entered into the agreement to purchase. We believe this information withheld was material and, in view of the representation made, appellees were entitled to rely on the fact that the well would produce water necessary for normal family use. Appellant either knew his representations were false or knew that he did not possess enough information on which to make the representations." 192 Pa. Super. at 475, 161 A.2d at 630.

Knowing that the supply of water was inadequate when they were occupying the house and that the

supply of water in a rural area is important, defendants owed a duty to disclose the information to plaintiffs. Although there is no fraud in the traditional sense, defendants breached the duty of disclosure which they owed to the buyers. *Musser.* The inadequacy of water was not discoverable upon a reasonable inspection of the premises. We find that plaintiffs relied upon the misrepresentation about there being no problem with the water and relied upon the appearances of an adequate supply of water that they might reasonably deduce from the concealment of material information. Accordingly, plaintiffs have proved by evidence clear, precise, and convincing that the non-disclosure and concealment were material, that they relied upon it to their detriment, and that defendants are liable for such culpable misrepresentation. *Musser.*

In sum on the liability aspects of this case, Kissell Co. has been dismissed as a defendant. We hold that Aarco Realty is liable to the Della Toffalos for breach of its contractual duty. Also Merrill Lynch Realty is not liable to plaintiffs for any fraudulent misrepresentation or concealment, nor is Merrill Lynch Realty liable to plaintiffs on any other cause of action. Finally, Merrill Lynch Realty is not liable over to the original defendants on any cause of action.

## DAMAGES

Plaintiffs contend they would not have purchased the property had they known that the house did not have its own independent supply of water. In addition, they say that water is so basic to human needs that under the circumstances surrounding the purchase they are entitled to rescission. Yet except for a few hours and at times for a day or so, plaintiffs have had water, though it may have been insufficient.

We hold that plaintiffs have not proved fraud in the inducement nor have they proved that the non-disclosure and concealment were so pervasive as to entitle them to rescission of the contract. Plaintiffs have purchased a house and lot, adequate in all respects, containing no hazards, but falling short of the bargain to which they are entitled.

Asserting that they should recover damages from defendants, plaintiffs say they ought to recover not only the diminution in value of their property, an amount of $7,200 according to their real estate expert, but also damages for the costs of repairs and a new 5,000-gallon holding tank. Plaintiffs cannot recover both the diminution in value and the other costs. The measure of damages is limited to the costs of repairs to provide an adequate water supply rather than the diminution in market value. *Atwater v. Terminix International,* 351 Pa. Super. 221 505 A.2d 610 (1986). In order to provide for an adequate supply of water to plaintiffs, they are awarded damages for the cost of repairs and the cost of installing a system which will fairly perform its task.

The damages which constitute the cost of repairs and well digging amount to $2,260. Moreover, plaintiffs may recover the cost of a new holding tank. According to plaintiffs' expert on water, each person in a household uses about 50 gallons of water a day. Although the well expert was somewhat inconsistent in his testimony and his recommendations on the size of the tank, we find that his final recommendation that a 1,000-gallon tank will meet their needs is fair and appropriate. The cost for such a tank is $1,375. The total damages awarded to the plaintiffs to provide them with a system that will produce an adequate supply of water is $3,635.

## DECISION

And now, this July 21, 1986, the court renders its decision in favor of plaintiffs, Joseph Mongelluzzo and Camille L. Mongelluzzo, his wife, and against defendants, Anthony J. Della Toffalo and Janet Della Toffalo, his wife, in the amount of $3,635. The claim for rescission brought by plaintiffs is dismissed.

The court further renders its decision in favor of Anthony J. Della Toffalo and Janet Della Toffalo, defendants, and against the additional defendant, Aarco Realty Inc., for breach of its contractual duty in the amount of $1,817.50.

The court also renders its decision in favor of Merrill Lynch Realty, Hammill-Quinlan, additional defendant, and against Aarco Realty Inc.

All other claims of the parties are hereby dismissed.