## Raymond Rosen and Company Inc.
## v. Seidman and Seidman

*Wayne M. Thomas,* for plaintiffs.
*Joseph W. Swain,* for defendant.

CAESAR, *J.*, March 9, 1988 —

AMENDED OPINION TO BE SUBSTITUTED
FOR MEMORANDUM OPINION AND ORDER
FILED JANUARY 11, 1988

On January 11, 1988, this court granted defendant accounting firm Seidman and Seidman a partial summary judgment. We ruled that plaintiffs, Raymond Rosen and Company Inc. and Peirce-Phelps Inc., two creditors of a bankrupt firm audited by defendants presented enough evidence to maintain an action for accountant misrepresentation. On January 21, 1988 defendant filed a Petition for Reconsideration or Clarification or Certification of Memorandum and Order dated January 11, 1988. Plaintiffs filed a response to the Petition for Reconsideration and a hearing was held February 29, 1988 to dispose of this matter, together with other outstanding discovery motions.

Defendant's petition maintained that our memorandum opinion of January 11, 1988 which set forth elements required for accountant misrepresentation imposed "liability without fault" on accountants and was inconsistent with the court's prior ruling that negligence by the accountants, even if proven, would not be sufficient basis for recovery.

The particular issue raised by defendant is whether the court adequately addressed the need to show specific intent to defraud or scienter, or whether recklessness and/or gross negligence are

sufficient in an action for accountant misrepresentation. Upon considering defendant's thoughtful analysis, and in recognition that the question of permitting recklessness and/or gross negligence as a "substitute" for the specific intent to deceive is a matter of the first impression, this court submits a further explanation of its January 11 memorandum and order, by way of the following amended opinion.

• • •

Currently before the court is a motion for summary judgment which obliges the court to address the elements of fraudulent misrepresentation needed to impose liability on accountants when their certified financial statements are used by third parties. Defendant Seidman and Seidman is a certified public accounting firm which prepared a financial report for Marta Group Inc. Marta is a cooperative retail group that purchases substantial quantities of appliances and other products from suppliers to pass on advertising, promotional and volume discounts to its members. Plaintiffs Rosen and Peirce-Phelps are two creditors who claim they relied on the Marta financial report and, as a result, supplied Marta with substantial quantities of merchandise on credit. Marta declared bankruptcy while allegedly owing plaintiffs $526,030.06. Plaintiffs now seek recovery against defendant, claiming that the financial statements so violated generally accepted accounting principles and auditing standards that their publication rose to the level of fraudulent misrepresentation. In addition, plaintiffs claim they relied on these statements in supplying credit to Marta and thereby suffered financial loss.

Defendant has filed a motion for summary judgment, arguing that plaintiffs have failed to demonstrate the requisite elements needed for fraudulent misrepresentation. Specifically, defendant avers

that plaintiffs failed to show (1) that defendant had the specific intent (scienter) to deceive plaintiffs, and/or (2) that plaintiffs sufficiently relied on the financial report in extending credit to Marta. Plaintiffs argue that the specific intent to deceive is not necessary where the misrepresentation is so material as to be a significant factor in inducing plaintiffs to act. Plaintiffs also maintain that materiality and reliance are factual issues that cannot be resolved in a motion for summary judgment.

Initially, we grant partial summary judgment for any losses sustained by Rosen for sales made to Marta before June 16, 1982 and for any losses sustained by Peirce for sales made to Marta before May 27, 1982.[1] The record reveals that either the Seidman report or a summary thereof containing an opinion of Marta's financial position was received on those dates.

Secondly, we find that plaintiffs more accurately state the emerging law in this jurisdiction with respect to an action for accountant misrepresentation. Specifically, it appears that scienter, or specific intent to deceive, need not necessarily be shown in such an action. Given the absence of the need for scienter, plaintiffs present enough evidence to meet the elements of misrepresentation so as to survive a motion for summary judgment.

---

1. Defendant's counsel has produced evidence that would indicate that the financial report for the years ending December 31, 1981 and 1980 were not disseminated until May 27, 1982, despite the fact that the date on Seidman's cover letter to Marta was February 26, 1982. Plaintiffs' counsel has not disputed that May 27, 1982 is a proper date to use for claims by Peirce.

With respect to the claims of Rosen, it appears that Rosen received a summary of the Seidman report shortly after June 16, 1982.

## DISCUSSION

In considering defendant's motion for summary judgment as to plaintiffs' claims arising out of losses resulting from sales in 1983, the court must resolve all doubts in favor of the plaintiffs as the non-moving party. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466. (1975). Additionally, since this is an action for common law fraud, the court must also test whether plaintiffs' evidence would be sufficiently clear and convincing to support a jury verdict in plaintiffs' favor. *Gerfin v. Colonial Smelting & Refining Company Inc.*, 374 Pa. 66, 67-8, 97 A.2d 71, 72 (1953).

In determining this present motion for summary judgment, Pennsylvania case law requires plaintiffs Rosen and Peirce to establish the following elements of fraud, by clear and convincing evidence:

(1) a false representation of an existing fact, *Fidurski v. Hammill*, 328 Pa. 1, 195 Atl. 3 (1937);

(2) if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved; while, if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action, *DeJoseph v. Zambelli,* '392 Pa. 24, 139 A.2d 644, affirming 11 D. & C. 2d 447 (1958);

(3) scienter, which may be either actual knowledge of the truth or falsity of the representation, reckless ignorance of the falsity of the matter, or mere false information where a duty to know is imposed on a person by reason of special circumstances, 16 P.L.E., Fraud §7;

(4) reliance, which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and,

(5) damage to the person relying thereon. *Shane v. Hoffman,* 227 Pa. Super. 176, 324 A.2d 532 (1974). See e.g., *Delahanty v. First Pennsylvania Bank,* 318 Pa. Super. 90, 464 A.2d 1243. It is to be noted the foregoing elements have evolved from cases concerning contract rescission in real estate cases when plaintiffs sought equitable relief. However, more recent case law has broadened this test to include actions for money damages, *Shane, supra; Mancini v. Morrow,* 312 Pa. Super. 192, 458 A.2d 580 (1983), and other forms of misrepresentations. *Reimer v. Tien,* 356 Pa. Super. 192, 514 A.2d 566 (1986), (university promotional material allegedly misrepresented its program to plaintiff; using aforementioned test, the Superior Court found no misrepresentation).

Since the *Shane/Delahanty* test is used in a variety of situations where misrepresentation is alleged, we apply this standard to the instant action involving allegations of fraudulent misrepresentation of accountants to third parties. Moreover, in using the above test as a guide, we find that if plaintiffs' evidence supports their contentions, it would be sufficent to demonstate: (1) false representation; (2) relating to a material matter; (3) that defendants as accountants had a special duty not to supply false representation; (4) reliance and (5) damage.

## False Representation

Plaintiffs aver that defendant's certification falsely represents that its report and audit were prepared and conducted according to generally accepted accounting principles and auditing standards. Plaintiffs allege that Seidman's report did not fairly present Marta's financial position because defendant improperly included operating losses as receivables, and did not adjust the receivables to reflect

their net realizable values. According to plaintiffs, defendant also failed to disclose that Marta was in default of its lending agreement with a creditor bank.

Plaintiffs also maintain that defendant's examination of Marta's records was not in accordance with generally accepted auditing standards. They content that Seidman did not conduct a truly independent audit because it audited its own decisions regarding permissible credit limits on Marta's customers. In addition, plaintiffs urge that defendant did not obtain sufficient evidence while doing its audit, did not issue a "subject to" opinion, and did not evaluate properly Marta's own internal control procedures setting credit limits for Marta's members.

Seidman vigorously contests plaintiffs' analysis and contends that its report was prepared and presented in accordance with generally accepted accounting principles. Defendant maintains that since Marta is a buying cooperative its statements were designed to reflect the peculiar nature of Marta's income and operating results. Furthermore, defendant argues that Marta was not in default of its loan with a creditor bank, and, in any case, the loan was properly presented on Marta's financial statements.

Defendant also responds that its audit was performed according to generally accepted auditing standards. First, in response to plaintiffs' charge that defendant was not independent, defendant argues that independent auditors frequently advise their clients on such matters as extending credit to others and this role is normal and expected so long as the auditors are not the final decision makers.

Defendant also disputes plaintiffs' claims that defendant's audit was improperly supervised, that it

was not based upon sufficient evidence, and that defendant had reason to issue a "subject to" opinion. Defendant asserts as well that whether or not Marta was enforcing its own internal control procedures was irrelevant to defendant determining the collectibility of Marta's receivables.

Both sides plan to present expert testimony during trial. Based on such testimony, the parameters of which are unknown at this time, plaintiffs' allegation that defendant did not adhere to generally accepted accounting principles and auditing standards could be found to be correct. If so, defendant's certification that its report on Marta was prepared in accordance with the generally accepted accounting principles and auditing standards would amount to a misrepresentation.

If defendant's arguments are found to be correct, or if defendant's method of conducting the audit and preparing the statements, while different from plaintiffs' method, is equally valid according to accounting and auditing standards, there would be no misrepresentation. Resolving all doubts in favor of plaintiffs, this court determines that plaintiffs have met the threshold for this court to determine that it is possible, depending on the evidence, for plaintiffs to prove a misrepresentation of fact.

### Materiality

Assuming arguendo that plaintiffs successfully showed defendant deviated from established accounting and auditing procedures, plaintiffs must next demonstate the materiality of the report, and their reliance upon it, in their decisions to extend credit to Marta. Actual knowledge by defendant that the certification was false, and intent that plaintiffs rely upon it, is not required in order for plaintiffs to maintain this action for common law fraud. In *Delahanty v. First Pennsylvania Bank,* 318 Pa. Su-

per. 90, 108, 464 A.2d 1243, 1252 (1983), the Superior Court noted that a misrepresentation can be actionable as fraud even if it is innocently made when it relates to a material part of the transaction involved. In *Delahanty,* the court referred to *DeJoseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644, affirming 11 D.&C. 2d 447 (1958), which held that when an innocent party has a right to rely on defendant's representations, and those representations are a material part of the transaction involved, an action for fraud can be maintained. Nor does the misrepresentation need to be the sole inducement for the innocent party's action. *Delahanty,* 318 Pa. Super. at 108, 464 A.2d at 1252. Therefore, plaintiffs have set forth enough evidence to indicate defendant's report could have been a material and substantial factor in their decision to extend credit to Marta. Restatement (Second) of Torts §546 (1976).

## *Scienter*

Plaintiffs do not need to prove scienter, or the specific intent to deceive, in the instant action. There is no controlling case law in Pennsylvania concerning actions against accountants for fraudulent misrepresentations. Defendant cites Pennsylvania cases involving misrepresentations made by one party to another party concerning the financial condition of a third party which it claims is applicable to the instant action. In *Duff v. Williams,* 85 Pa. 490 (1878), and *Warren Balderston Co. v. Integrity Trust Co.,* 314 Pa. 58, 170 Atl. 282 (1934), the Supreme Court ruled that scienter is what makes a misrepresentation actionable. According to the above cases, the misrepresentation must be made knowingly, or in conscious ignorance of its falsity, or in reckless disregard of its truth, with the purpose of inducing the innocent party to act.

However, neither of these cases presented by defendant concerning misrepresentation of a third party's financial condition involve certified public accountants. The only Pennsylvania case involving a certified public accountant is *Landell v. Lybrand,* 264 Pa. 406, 107 Atl. 783 (1919), which was premised on negligence and relied upon by this court in granting defendant's preliminary objections and dismissing plaintiffs' avement of negligence. *Rosen v. Seidman,* 8404-1393 (slip op. February 13, 1985). *Landell* held that since there was no privity between defendant, a certified public accountant, and plaintiff, a third party who purchased stock based upon defendant's report, no action of negligence could lie for plaintiff. The Supreme Court in *Landell* does not squarely address the issue of scienter in a cause of action for misrepresentation nor deal with whether scienter could be inferred even absent the specifice intent to deceive.

The frequently cited case of *Ultramare's Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931) held that an action for fraud can be brought against certified public accountants without proving the specific intent to deceive plaintiff. The *Ultramares* case has been cited with approval by the Pennsylvania Supreme Court in upholding the privity requirements for professional malpractice. See *Guy v. Lieberbach,* 501 Pa. 47, 58, 459 A.2d 744, 750 (1983). On the question of whether scienter is required for an action of accountant fraudulent misrepresentation, the New York Court of Appeals stated:

"[W]e are to bear in mind the principle already stated in the course of this opinion that negligence or blindness, even when not equivalent to fraud, is none the less evidence to sustain an inference of fraud. At least this is so if the *negligence is gross"* (emphasis supplied). 285 N.Y. at 191, 174 N.E. at

449. Elsewhere in the *Ultramares* opinion Chief Justice Cardozo stated:

"Our holding [that there can be no action for negligence absent privity] does not emancipate accountants from the consequences of fraud. It does not relieve them if their audit has been so negligent as to justify a finding that they had no genuine. belief in its adequacy, for this again is fraud. It does no more than say that if less than this is proved, if there has been neither reckless misstatement nor insincere profession of an opinion, but only honest blunder, the ensuing liability for negligence is one that is bounded by the contract, and is to be enforced between the parties by whom the contract has been made."

A fair reading of the *Ultramares* case would indicate that, in Judge Cardozo's view, either gross negligence or reckless misstatements would support a finding of fraud, even without a finding of a specific intent to deceive.

Not only have Pennsylvania Courts cited *Ultramares* with approval, implying its reasoning is persuasive, but our courts have also indicated that the standard of "recklessness" may be relevant in actions for accountant misrepresentation.

"It is well settled that fraud is proved when it is shown that the false representation was made knowingly, or in conscious ignorance of the truth, or *recklessly without caring whether it be true or false.*" *Delahanty v. First Pennsylvania Bank,* 318 Pa. Super. at 108, 464 A.2d at 1252 (1983). (emphasis supplied)

In this era of complex financial transactions the duty of the accountant to provide potential investors and creditors with an accurate and independent audit takes on a special meaning. See *Rosenblum v. Adler,* 3 NJ 324, 461 A.2d 138, (1983) (discussing

the abolition of privity for accountant negligence to third parties). Although under Pennsylvania law accountants are not liable to third parties for a negligently prepared audit (See memorandum and order in the instant matter, February 13, 1985), because of their special duties to those creditors who rely upon their report, gross negligence or recklessness can give rise to an inference of fraud. See *Rosenblum v. Adler*, 461 A.2d at 151 and cases cited therein.

Plaintiff alleges several errors or omissions which if proved could lead to a finding of gross negligence or recklessness. These alleged accounting deviations include: listing operating costs improperly as receivables; preparing Marta's statement of results of operations in a way that concealed Marta's losses; failing to disclose Marta was in default of its lending agreement and failing to conduct an independent audit.

We cannot say at this juncture that plaintiff would fail to demonstrate either gross negligence or recklessness. Hence, summary judgment is inappropriate.

### Reliance

The developing case law in Pennsylvania and other jurisdictions concerning fraudulent misrepresentations of certified public accountants also demonstrates that there is a relationship between an accountant's special duty to creditors to provide accurate reporting and the element of third party reliance on such reports. See *Shane, supra,* 408, *Ultramares,* 174 N.E. at 444. In this case plaintiffs must prove by clear and convincing evidence that they justifiably relied on Seidman's report in extending credit to Marta. The question of whether plaintiffs' reliance on the Seidman opinions was rea-

sonable is a question of fact to be resolved at trial. See *Rempel v. Nationwide Life Insurance Co.,* 471 Pa. 404, 408, 323 A.2d 193, 197 (1977).

From the materials submitted by the parties, Seidman's report appears to be the latest available independent auditor's opinion. It also appears that plaintiffs had a business relationship with Marta. It is noted that Rosen never had a copy of defendant's report from Marta prior to Marta's bankruptcy, but rather used Dun & Bradstreet summaries of Seidman's 1980 and 1981 year end reports on Marta, dated May 30, 1981 and June 16, 1982 respectively. However, these summaries contained a certification by Seidman that the financial information was based on accepted accounting standards. Furthermore, one plaintiff, Peirce, knew in February 1983 directly from Marta officials that Marta was having financial problems, but continued to extend credit purportedly in reliance on the Seidman report. Peirce's credit manager avers that he judged defendant's report to be more accurate than Marta's own assessment of their financial status. The weight that should be ascribed to plaintiffs' prior relationship with Marta, and Peirce's knowledge of Marta's financial difficulties, as opposed to plaintiffs' use of the Seidman report as a basis of continued lending to Marta, requires additional evidence. Only after such evidence is presented can it be decided whether it was reasonable for plaintiffs to rely on Seidman's statements as an inducement to supply credit to Marta.

## Damages

It is not necessary to address the issue of damages in this memorandum, as it is undisputed plaintiffs suffered pecuniary loss extending credit to Marta. Whether and to what extent defendant's reports

were a substantial factor in causing these losses hinges on the aforementioned factors.

## CONCLUSION

In sum, this court cannot say, as a matter of law, that defendant has not uttered material and fraudulent misrepresentations in this matter. However, we recognize that plaintiff has a very substantial burden at trial of proving, by clear and convincing evidence that despite the existence of other reports, past business experience with Marta, and in Peirce's case, a personal admission from Marta as to Marta's financial difficulty that:

(a) Seidman's report was falsely certified.

(b) Seidman's report materially induced plaintiffs to extend credit to Marta.

(c) There existed scienter, gross negligence or a false representation "recklessly made without caring whether it be true or false" (*Delahanty v. First Pennsylvania Bank,* 318 Pa. Super. at 108, 464 A.2d at 1252).

(d) Plaintiffs justifiably relied on the allegedly inaccurate certified auditor's report.

(e) Such reliance caused the claimed losses.

## ORDER

And now, on March 9, 1988, a partial summary judgment is granted to defendant, Seidman and Seidman, for any financial losses incurred by plaintiff, Raymond Rosen & Company Inc., before June 16, 1982, and by plaintiff, Peirce-Phelps Inc., for losses incurred before May 27, 1982, in sales to third party, Marta Inc. The remaining portion of defendant's motion is denied.

## AMENDED ORDER

And now, this May 12, 1988, order entered on March 9, 1988, is amended to read as follows:

A partial summary judgment is granted to defendant, Seidman and Seidman, for any financial losses incurred on sales made to third party, Marta Group Inc., by plaintiff, Raymond Rosen & Company Inc. before June 16, 1982, and by plaintiff, Peirce-Phelps Inc., before May 27, 1982. The remaining portion of defendant's motion is denied.