108 Pa. Commonwealth Ct. 300 (1987)
529 A.2d 1157
Commonwealth of Pennsylvania by Attorney General LeRoy S. Zimmerman, Plaintiff
v.
National Apartment Leasing Company a/k/a NALCO, Defendant.
No. 185 C.D. 1986.
Commonwealth Court of Pennsylvania.
Argued May 19, 1987.
August 10, 1987.
*301 Argued May 19, 1987, before Judges MacPHAIL and DOYLE, and Senior Judge NARICK, sitting as a panel of three.
Douglas P. Yauger, Deputy Attorney General, with him, Caren L. Mariani, Deputy Attorney General, for plaintiff.
Joan Shoemaker, with her, John V. Adams, Jr., Adams, Shoemaker & McSorley, for defendant.
OPINION BY JUDGE MacPHAIL, August 10, 1987:
National Apartment Leasing Company (NALCO) has filed preliminary objections to the Commonwealth's amended civil action in equity[1] filed in our original jurisdiction. We will overrule the objections.
*302 In NALCO I we set forth in some detail the gravamen of the Commonwealth's action. Suffice it to say that the Attorney General in the name of the Commonwealth, pursuant to the authority he claims to have under the provisions of the Unfair Trade Practices and Consumer Protection Law (Law), Act of December 17, 1968, P.L. 1224, as amended, 73 P.S. §§201-1  201-9.2, seeks to impose civil penalties upon NALCO and also enjoin it from using in the conduct of its business methods, acts or practices which have been declared unlawful by Section 3 of that Law, 73 P.S. §201-3.
In the amended pleading now before us, the Commonwealth alleges that NALCO is engaged in the business of renting apartments and residential units in the Pittsburgh area; that it requires security deposits from each of its tenants; that the Commonwealth has received complaints from former tenants of NALCO averring that NALCO has unlawfully withheld from their security deposits sums of money for cleaning the premises when, in fact, such cleaning services were unnecessary; that this fraudulent conduct violated the Law and The Landlord and Tenant Act of 1951, Act of April 6, 1951, P.L. 69, as amended, 68 P.S. §§250.101  250.602, and that citizens of the Commonwealth are suffering and will continue to suffer irreparable harm unless the acts and practices complained of are enjoined.
NALCO has filed 42 objections to the amended pleading raising a question of jurisdiction, a motion to strike alleging that the pleading lacks conformity to rule of court and contains scandalous and impertinent matter, a request for a more specific pleading, a demurrer *303 and the lack of capacity to sue and pendency of prior actions.[2]

JURISDICTION
NALCO contends that the Law is unconstitutional and since the Attorney General commenced this action pursuant to the provisions of the Law, this Court lacks both subject matter and personal jurisdiction. In NALCO I we held that we did not need to address the constitutional issue inasmuch as there were other reasons why the challenged pleading was deficient.
As will be noted, the Law has been in effect in the Commonwealth for nearly 20 years. It does not appear that its constitutionality has been determined in any reported case. The legislative history of the act is discussed in great detail in Commonwealth v. Monumental Properties, Inc., 459 Pa. 450, 329 A.2d 812 (1974). In that case it is noted that the Law has regularly been interpreted by this Court as being based upon the Federal Trade Commission Act, 15 U.S.C. §§41-58, and the Lanham Trademark Act, 15 U.S.C. §§1051-1127.
NALCO's first constitutional argument is that the Law is, in fact, a penal statute because it provides for penalties in Section 8, 73 P.S. §201-8. NALCO then argues that because it is a penal statute, the provisions of Amendments I, IV, V and XIV of the United States Constitution apply. NALCO says that the statute unlawfully establishes a new crime of "unfairness" in the definition section, Section 2, 73 P.S. §201-2, and that in Section 4, 73 P.S. §201-4, it empowers the government *304 to obtain prior restraint of "unfair speech" and to control all commercial activity in the Commonwealth based upon the government's purely subjective and undefined determination of whether such activities are fair.
Inasmuch as NALCO's contention that the statute is criminal is based solely upon the argument that the provisions of Section 8 render it so, we must examine what that section says and how it has been applied by the courts. First of all, it must be observed that the Legislature denoted the penalties therein set forth as civil penalties.[3] In United States v. J. B. Williams Co., Inc., 498 F.2d 414 (2d Cir. 1974), the U.S. Second Circuit Court of Appeals held that similar civil penalties provided for in section 5(1) of the Federal Trade Commission Act, 15 U.S.C. §45(1), did not entitle a party being prosecuted by the Federal Trade Commission for deceptive practices to a jury trial.[4] That Court noted that "[w]hen Congress has characterized the remedy as civil and the only consequence of a judgment for the Government is a money penalty, the courts have taken Congress at its word." J. B. Williams Co., Inc., 498 F.2d at 421. That Court refused to overlook Congress' characterization of the penalty as civil and concluded that the accused party was not entitled to a jury trial under the Sixth Amendment of the United States Constitution. Our courts also have consistently paid heed to the legislative *305 mandate that the penalties provided in the Law are civil in nature. Biester v. Luther Ford Sales, Inc., 60 Pa. Commonwealth Ct. 123, 430 A.2d 1053 (1981) and Commonwealth v. Flick, 33 Pa. Commonwealth Ct. 553, 382 A.2d 762 (1978).
We conclude that the Law is civil in nature and that no new crime was created by its provisions. We further conclude that inasmuch as Section 2 of the Law sets forth with much specificity the definition of "unfair methods of competition" and "unfair or deceptive acts or practices," the Commonwealth does not have unbridled authority to determine which activities are fair and which are not.
NALCO also argues that the provisions of Section 4 of the Law, 73 P.S. §201-4, which authorize the Attorney General or a District Attorney to bring an action where that officer has reason to believe that any person is using "or is about to use" any method, act or practice declared to be unlawful, may effect an unconstitutional prior restraint on speech. It is not at all clear to this Court, however, that any prior restraint aspect of the Law has been implicated in the Commonwealth's suit against NALCO. As our Supreme Court has observed in Commonwealth v. Bonadio, 490 Pa. 91, 94 n. 2, 415 A.2d 47, 49 n. 2 (1980):
The question of the constitutionality of a statute cannot generally be determined abstractly but rather is to be determined only as it applies and is sought to be enforced in a particular case before the court, since the power to repeal a statute is not judicial in character; and, furthermore, one who is unharmed by a particular feature of a statute will not be heard to complain of its alleged unconstitutionality.
Applying these principles to the instant matter, we must decline to address the prior restraint of speech *306 issue since it has no apparent direct relation to the remedy sought by the Commonwealth against NALCO.
NALCO next contends that the Law is unconstitutionally void for vagueness: (1) because it does not give notice that the retention of escrow funds is prohibited and (2) that it does not define "fraud," "unfair practices" and/or "deceptive practices." While it is true that the retention of escrow deposits is not a specifically prohibited act under the Law, if such retention is unauthorized and occurs with some frequency, such conduct would be a deceptive act under the definition thereof as found in Section 2(4)(xiv), 73 P.S. §201-2(4)(xiv).[5] Section 2(4) also defines with sufficient specificity the terms "unfair practices" and "deceptive practices." With respect to "fraud," a term not defined, Section 1903(a) of the Statutory Construction Act of 1972 advises that where a word is not defined in the statute but the word has acquired a peculiar and appropriate meaning, it shall be construed according to such peculiar and appropriate meaning for definition. 1 Pa. C. S. §1903(a). "Fraud" certainly has acquired a peculiar and appropriate meaning in the law. We turn to Black's Law Dictionary 594 (5th ed. 1979) for a definition and find one that is sufficiently simple and broad to answer our purpose: "[a]ny kind of artifice employed by one person to deceive another." We conclude that the statute is not unconstitutionally vague.
It is contended that the Law provides for no protection against an unreasonable search and seizure because the Attorney General not only can bring an action for injunctive relief but he can conduct an unwarranted search and seizure through subpoena or discovery even *307 though he has no more than a reason to believe that a defendant is about to act. We find nothing in the Law which specifically authorizes the Attorney General to make unwarranted searches and seizures, nor does the Law give that Officer any unusual subpoena or discovery powers.[6]
NALCO further argues that the provision in Section 8, 73 P.S. §201-8, for multiple penalties where there are multiple violations is a violation of constitutional protection against double jeopardy and the constitutional guarantee of due process of law. Suffice it to say that we have already concluded that the Law is not a criminal statute, therefore, double jeopardy is inapplicable. Regarding due process, NALCO contends that the statute does not provide notice of the prohibited conduct. We disagree. Sections 2 and 3 of the Law sufficiently apprise all persons of what is prohibited by the Law.
We will hold that the Law is constitutional and that this Court has jurisdiction of the subject matter and NALCO.

DEMURRER
NALCO renews its objection that the Commonwealth has failed to state a cause of action. Accepting as true all of the factual averments in the challenged pleading solely for the purpose of ruling on the demurrer, we hold that the pleading now sets forth that NALCO is engaged in a practice which, if proven, is unlawful under the provisions of Section 2 of the Law.

*308 MORE SPECIFIC PLEADING
NALCO renews its objection that the Commonwealth's pleading is vague because it fails to set forth the time, place and date of the violations of which it is accused. We must remind NALCO that the gravamen of a complaint under the Law is that the violator is engaged in a course of conduct which involves a method, act or practice declared to be unlawful by the Law. In the instant case, it is the practice of illegally retaining security deposit funds which is at issue. We hold that the amended pleading now before us sufficiently describes the unlawful practice to enable NALCO to prepare its defense. More detail is not required.

CONCLUSION
For the reasons hereinbefore set forth, we will overrule NALCO's preliminary objections.

ORDER
It is ordered that the preliminary objections of National Apartment Leasing Company be and the same are hereby overruled. It is further ordered that National Apartment Leasing Company shall have 30 days from the date hereof to file an answer to the Commonwealth's amended pleading setting forth its civil action in equity.
NOTES
[1] In Commonwealth of Pa. v. National Apartment Leasing Co., 102 Pa. Commonwealth Ct. 623, 519 A.2d 1050 (1986), hereinafter NALCO I, we sustained in part NALCO's preliminary objections and granted leave to the Commonwealth to file an amended complaint.
[2] NALCO's statement of questions in its brief does not include the motion to strike, the lack of capacity to sue or the pendency of prior actions. Neither are those matters discussed in NALCO's brief. We, therefore, pursuant to the provisions of Pa. R.A.P. 2116, will disregard those objections.
[3] Section 8(a) provides that where a person violates any injunction issued under the statute, that person shall forfeit and pay to the Commonwealth a "civil penalty" of not more than $5,000.00 for each violation. Section 8(b) provides that where the court finds that a person has wilfully used any method, act or practice declared to be unlawful by the statute, the Attorney General may recover on behalf of the Commonwealth a "civil penalty" not exceeding $1,000.00 per violation.
[4] The Federal Trade Commission Act was amended to provide a civil penalty similar to that set forth in Section 8(b) of the Law. See 15 U.S.C. §45(m).
[5] Section 2(4)(xiv) provides that "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made" is a deceptive practice.
[6] Section 6 of the Law, 73 P.S. §201-6, which formerly dealt with the civil investigative powers of the Attorney General, was deleted by a 1972 amendment to the Law.