116 Pa. Commonwealth Ct. 55 (1988)
541 A.2d 51
Chatham Racquet Club, a/k/a Downtown Racquet Club 1000, Appellant
v.
Commonwealth of Pennsylvania, by Attorney General LeRoy S. Zimmerman, Appellee.
No. 39 T.D. 1987.
Commonwealth Court of Pennsylvania.
Argued March 24, 1988.
May 9, 1988.
*56 Argued March 24, 1988, before Judges MacPHAIL, COLINS and McGINLEY, sitting as a panel of three.
James R. Cooney, with him, Mitchell A. Kaufman and Maurice A. Nernberg, Jr., Nernberg & Laffey, for appellant.
*57 Douglas P. Yauger, Deputy Attorney General, with him, Caren L. Mariani, Office of Attorney General, Bureau of Consumer Protection, for appellee.
OPINION BY JUDGE MacPHAIL, May 9, 1988:
Before us for disposition is an appeal by the Chatham Racquet Club (Club) from an order of the Court of Common Pleas of Allegheny County which granted a preliminary injunction sought by the Office of Attorney General pursuant to Section 4 of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, as amended, 73 P.S. §201-4 (Act).
The facts are not in dispute. The Downtown Racquet and Athletic Club was in bankruptcy. A new ownership group purchased the facility's assets through the bankruptcy court proceedings. The purchase was "subject to" the membership contracts of the Downtown Racquet and Athletic Club. Subsequent to its purchase of the membership contracts, the Club began to charge patrons with current memberships a monthly service fee which varied in amount. Despite this fee charge, the trial court found that the Club offered its members no commensurate increase in services. Club members complained and the Attorney General then took legal action under the provisions of Section 4 of the Act. That Section permits the Attorney General to seek an injunction when he has reason to believe that any person is or is about to violate any substantive provision of the Act.
The Attorney General brought his complaint in equity alleging that the increase in current members' fees constituted fraudulent conduct which creates a likelihood of confusion or misunderstanding. Such conduct is prohibited by Section 2 of the Act, 73 P.S. §201-2 (defining, inter alia, unfair methods of competition and unfair or deceptive acts or practices).
*58 The trial court found as fact that the Club's action in increasing fees did engender "a chaotic situation fraught with confusion." It did not specifically find, however, that the Club had an intent to defraud anyone or that it had acted in bad faith. The court then granted a preliminary injunction and its order directed the following:
A. That Defendant is enjoined from barring any member with a valid contract with prior owners, purchased by current owners, from using any facility at 1000 Colwell Street, Pittsburgh, Pa., provided that all disputed monthly charges incurred after August, 1986 until final disposition of this case are paid into an escrow account more fully described below.
B. That the Office of Attorney General, Bureau of Consumer Protection, as escrow agent, shall establish an interest-bearing account into which members' disputed monthly charges shall be deposited. Defendant shall have access to the account for auditing purposes. Within a reasonable time after the tenth day of each month prior to final disposition of this case, the Office of Attorney General shall present to Defendant a list of all members who have paid their charges into escrow pursuant to paragraph A above. This account is in no manner to be considered an asset of Defendant until final disposition of this case.
C. That Defendant shall prepare and deliver to the Office of Attorney General, Bureau of Consumer Protection, a full and complete list of members affected by this Order, including an itemized accounting of monthly dues, charges and credits. Defendant bears all responsibility for billing and collection.
The Club petitioned for reconsideration, which was denied. Hence, the present appeal.
*59 Where the appeal is one from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but merely examine the record to ascertain whether there existed any reasonable basis for the trial court's action. Mazzie v. Commonwealth, 495 Pa. 128, 432 A.2d 985 (1981). We will reverse the lower court's determination only if it is plain that no grounds exist to support the decree or that a rule of law relied upon was palpably erroneous or misapplied. Id.
In the instant case, the Club asserts only one error. It contends that the actions complained of do not fall within the ambit of the Act and, hence, that the Attorney General lacked authority to bring this action and the trial court was, accordingly, without jurisdiction to decide it. Specifically, the Club contends that the Act prohibits unfair or deceptive trade practices and that the conduct of which it is accused does not, as a matter of law, constitute such a practice.
The legislature's intent in passing the Act was to protect citizens from unfair or deceptive practices. Thus, the Act's goal is to benefit the public at large by eradicating unfair or deceptive business practices. Commonwealth v. Monumental Properties, Inc., 459 Pa. 450, 329 A.2d 812 (1974). To this end, Section 2 of the Act contains a list of sixteen specific prohibited activities which are therein defined as unfair methods of competition or deceptive acts or practices. It also contains in Section 2(4)(xvii) a "catchall provision" which instructs that "[e]ngaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding" constitutes an unfair method of competition or an unfair deceptive act or practice. 73 P.S. §201-2(4)(xvii). It is this provision which forms the basis for the Attorney General's lawsuit.
Our State Supreme Court has indicated that the catchall provision in Section 2 of the Act is designed to *60 cover generally all unfair and deceptive acts or practices in the conduct of trade or commerce. Monumental Properties. Additionally, the Act's goal is to place consumers on more equal footing with sellers. Id. Further, the Act is to be liberally construed to effectuate its intent. Id. These general precepts led the Monumental Properties Court to conclude that leasing of rental property was within the purview of the Act's protections although it was not specifically mentioned therein.
Similarly, the conduct here is not expressly disallowed by the Act. The complaint, however, did allege that Club members were being billed additional sums subsequent to their payment in full of their dues, that the Club's purchase had been "subject to the memberships," and, consequently, that the increase in fees was violative of Section 2 of the Act. The trial court concluded that the imposition of additional fees had occurred and that such action created "a chaotic situation, fraught with confusion and misunderstanding." Further, the trial court opined that in buying the assets "subject to" the memberships the Club was obligated to honor the contracts entered into between the members and the Downtown Racquet and Athletic Club.
Nowhere, however, did the trial court find or hold that the Club's actions were fraudulent. It is only when the confusion and misunderstanding created by the actor is fraudulent that the provisions of the Act may be activated. See Commonwealth v. National Apartment Leasing Co., 102 Pa. Commonwealth Ct. 623, 519 A.2d 1050 (1986). Our review of the trial judge's comments during the course of the hearing indicate that he was not convinced that the Club had done any intentional wrong but rather that there was a valid reason for a bona fide difference of opinion in interpreting what was intended in the purchase agreement by the words "subject to" existing memberships. In our judgment *61 such circumstances fall short of fraud or fraudulent conduct.
Inasmuch as the Attorney General's complaint avers that the Club's actions do violate the Act, we agree with the trial court that it has jurisdiction to determine whether or not the Attorney General can prove such a violation. We do not, however, believe that those allegations, without some finding by the trial court from evidence produced that the Attorney General has proven fraudulent conduct, are sufficient to warrant the entry of a preliminary injunction. One of the requirements the Attorney General has to meet to obtain a preliminary injunction is a showing that his right to relief is clear. Township of South Fayette v. Commonwealth, 477 Pa. 574, 385 A.2d 344 (1978). As we have indicated, unless the Attorney General can prove fraudulent conduct on the part of the Club, the Attorney General's right to relief under the Act is barred. We, therefore, conclude that the Attorney General's right to relief here is not clear.
We, accordingly, must vacate the preliminary injunction and remand the case for a trial on the merits of the Attorney General's request for a permanent injunction.

ORDER
The order of the Court of Common Pleas of Allegheny County dated January 6, 1986, is reversed and the preliminary injunction is vacated. The case is remanded to the trial court for trial.
Jurisdiction relinquished.