561 A.2d 354

**CHATHAM RACQUET CLUB a/k/a Downtown Racquet & Athletic Club, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania by Attorney General, Leroy S. ZIMMERMAN, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1989.

Decided June 28, 1989.

Reargument Denied Sept. 6, 1989.

James R. Cooney, Nernberg & Laffey, Pittsburgh, for appellant.

Caren L. Mariani, Douglas P. Yauger, Office of the Atty. Gen., Bureau of Consumer Protection, Pittsburgh, for appellee.

Before COLINS and McGINLEY, JJ., and BARBIERI, Senior Judge.

McGINLEY, Judge.

Chatham Racquet Club (Chatham) a/k/a Downtown Racquet Club appeals an order of the Court of Common Pleas of Allegheny County (Chancellor), which granted a permanent injunction sought by the Office of the Attorney General (Attorney General) pursuant to the Unfair Trade Practices and Consumer Protection Law (Consumer Protection Law), Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1—201-9.2. We reverse.

The facts are not in dispute. During the bankruptcy proceedings of the Downtown Racquet and Athletic Club (Facility), a new ownership group purchased the Facility's assets. The evidence at the hearing for permanent injunction established that at the bankruptcy proceedings several bids were made for the Facility, including one bid for $1,500,000 and Chatham's bid of $1,400,000. Chatham also offered to take the Facility subject to the memberships (members), whereas the higher bid did not include such an

undertaking.[1] The bankruptcy court entered an order directing the sale to Chatham with the specific provision that the sale was subject to the terms and conditions of a purchase agreement which in turn provided that the sale to Chatham was subject to all the membership contracts.

Subsequent to its purchase Chatham began to charge the members a monthly service fee which varied in amount depending upon the members' original contract. Despite this charge, Chatham offered no commensurate increase in services. The members complained and the Attorney General sought an injunction under the provisions of Section 4 of the Consumer Protection Law, 73 P.S. § 201-4 alleging there was reason to believe that Chatham was in the process of using a method, act or practice declared to be unlawful under the Consumer Protection Law.[2]

The Attorney General alleged that the increase in members' fees constituted fraudulent conduct which created a likelihood of confusion or misunderstanding under Section 2 of the Consumer Protection Law, 73 P.S. § 201-2. After hearing, the Chancellor found that Chatham's acts created "a chaotic situation fraught with confusion." (Opinion of the Chancellor, November 26, 1986, at 5-6.) The Chancellor did not specifically find that Chatham had an intent to defraud anyone or that it had acted in bad faith, but

**1.** Chatham's counsel indicated that Chatham has extended benefits to the approximately 800 prior members totalling in excess of $280,-000.00. (N.T. I at 11.)

**2.** We note that in the September 26, 1985, Purchase Agreement, the parties agreed that the bankruptcy court would have exclusive jurisdiction in this matter:

4. Purchaser and Seller acknowledge and understand that the sale of the Club Property is subject to public bidding and is further subject and conditioned upon a final and nonappealable Order of the United States Bankruptcy Court for the Western District of Pennsylvania ("Court") by November 18, 1985, approving the transaction contemplated herein.

23. This Agreement shall be subject to approval of the Court and shall be construed according to the laws of the Commonwealth of Pennsylvania and the United States Bankruptcy Code. *Seller and Purchaser agree that the Court has exclusive jurisdiction over all disputes arising pursuant to this Agreement.*

Plaintiff's Exhibit "1," Reproduced Record (RR) at 323a–327a (emphasis added).

granted the injunction.[3]  Chatham's petition for reconsideration was denied.

Chatham next sought a stay pending appeal in this Court. On May 9, 1988, this Court reversed the order of the Chancellor, vacated the preliminary injunction and remanded the case for a trial on the merits of the Attorney General's request for a permanent injunction.[4]

After hearing on May 13, 1988, the Chancellor concluded that the action of Chatham

> in demanding or charging an additional service fee was in complete disregard of the Court Order and was a fraud, not only upon the Bankruptcy Court, but upon the consumers who were the objects of consideration of the Bankruptcy Court in directing that the sale be made subject to the existing membership contracts.

(Opinion of the Chancellor, June 20, 1988, at 2.)

The Chancellor then issued a decree nisi.  On August 25, 1988, the Chancellor denied Chatham's motions for post

---

**3.** The Chancellor's order directed:

　　A.  That Defendant is enjoined from barring any member with a valid contract with prior owners, purchased by current owners, from using any Facility at 1000 Colwell Street, Pittsburgh, Pa., provided that all disputed monthly charges incurred after August, 1986 until final disposition of this case are paid into an escrow account more fully described below.

　　B.  That the Office of Attorney General, Bureau of Consumer Protection, as escrow agent, shall establish an interest-bearing account into which members' disputed monthly charges shall be deposited.  Defendant shall have access to the account for auditing purposes.  Within a reasonable time after the tenth day of each month prior to final disposition of this case, the Office of Attorney General shall present to defendant a list of all members who have paid their charges into escrow pursuant to paragraph A above.  This account is in no manner to be considered an asset of defendant until final disposition of this case.

　　C.  That Defendant shall prepare and deliver to the Office of Attorney General, Bureau of Consumer Protection, a full and complete list of members affected by this Order, including an itemized accounting of monthly dues, charges and credits.  Defendant bears all responsibility for billing and collection.

Opinion of the Chancellor, November 26, 1986, at 2–3.

**4.**  *Chatham Racquet Club v. Commonwealth,* 116 Pa.Commonwealth Ct. 55, 541 A.2d 51 (1988).

trial relief and recusal and entered judgment on the decree nisi. Chatham appeals.

Chatham raises several issues [5] on appeal. The issue dispositive of this matter is whether Chatham's actions constituted the requisite fraudulent conduct under the Consumer Protection Law.

This Court's scope of review is limited:

> 'The trial judge sitting in equity as a chancellor is the ultimate fact finder.' ... The findings of fact of the chancellor should not be set aside unless the error is manifest.... 'Therefore only if it is plain that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the chancellor.' (Citations omitted.)

*Peugeot Motors of America, Inc. v. Stout,* 310 Pa.Superior Court 412, 418, 456 A.2d 1002, 1005 (1983).

Our State Supreme Court in *Commonwealth by Creamer v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974), explained that the Consumer Protection Law's underlying foundation is fraud prevention, and that it is to be construed liberally to effect its object of preventing unfair or deceptive practices.[6]

Section 2 of the Consumer Protection Law contains a list of seventeen specific prohibited activities which are therein defined as unfair methods of competition or deceptive acts or practices. It also contains in Section 2(4)(xvii) a "catchall provision" which provides that "[e]ngaging in any other fraudulent conduct which creates a likelihood of confusion

---

**5.** Chatham argues that: 1) the court of common pleas lacked jurisdiction; 2) there was insufficient evidence to support a finding of fraud; 3) dismissal was required under the law of the case doctrine; 4) the court of common pleas erred in concluding that Chatham failed to honor the memberships; 5) the court erred in admitting evidence in violation of the doctrine of merger and/or parole evidence rule; 6) the court erred in granting relief not requested in the pleadings and which was not justified by the evidence; and 7) the trial judge erred in refusing to recuse himself.

**6.** In *Creamer,* the Supreme Court held that the Consumer Protection Law covered allegedly unfair or deceptive practices in connection with the leasing of housing, even though it was not specifically mentioned therein.

or of misunderstanding" constitutes an unfair method of competition or an unfair or deceptive act or practice. In *Monumental Properties*, the Court indicated that this catchall provision in Section 2 of the Consumer Protection Law is designed to cover generally all unfair and deceptive acts or practices in the conduct of trade or commerce. The Attorney General argues that, even though Chatham's conduct is not expressly prohibited by the Consumer Protection Law, the members were being billed additional sums subsequent to the full payment of their dues, yet Chatham's purchase had been "subject to the memberships," and therefore Chatham's increase in fees is violative of Section 2 of the Consumer Protection Law.

Chatham argues that the Attorney General failed to prove fraudulent conduct because it did not establish these essential elements:

(1) a false representation of an existing factor; (2) if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved; while if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action; (3) scienter, which may be either actual knowledge of a truth or falsity of representation, reckless ignorance of the falsity of the matter, or mere false information where a duty to know is imposed on a person by reason of special circumstances; (4) reliance, which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and (5) damage to the person relying thereon. (Citations omitted.)

*Mancini v. Morrow,* 312 Pa.Super. 192, 202, 458 A.2d 580, 585 (1983) (quoting *Shane v. Hoffmann,* 227 Pa.Super. 176, 182, 324 A.2d 532, 536 (1974)).

Conceding that it has not proven all of the elements of common law fraud, the Attorney General argues that the Consumer Protection Law, which proscribes deceptive practices, provides a broader, more flexible standard of actionable merchant misconduct than does the traditional remedy

of common law fraud. (Attorney General's Brief at 18.) The Attorney General argues that the modern concept of deception, as formulated by judicial interpretations of the Consumer Protection Law, eliminates the requirement of proof of intent, scienter, actual reliance or damage, and requires only a showing that an act or practice has a tendency or capacity to deceive even a significant minority of consumers.

This Court has held that "[i]t is only when the confusion and misunderstanding created by the actor is fraudulent that the provisions of the Act may be activated." *Chatham Racquet Club,* 116 Pa.Commonwealth Ct. at 60, 541 A.2d at 54. In *Commonwealth v. National Apartment Leasing Company,* 108 Pa.Commonwealth Ct. 300, 529 A.2d 1157 (1987), wherein the Attorney General acted on complaints from former tenants of an apartment leasing company averring that the company unlawfully withheld from their security deposits sums of money for cleaning the premises when, in fact, such cleaning services were unnecessary, this Court stated that conduct which constitutes a deceptive act is defined in Section 2(4)(xiv), 73 P.S. § 201–2(4)(xiv).[7] The Court further interpreted the language of Section 2 of the Consumer Protection Law:

> Section 2(4) also defines with sufficient specificity the terms 'unfair practices' and 'deceptive practices.' With respect to 'fraud,' a term not defined, Section 1903(a) of the Statutory Construction Act of 1972 advises that where a word is not defined in the statute but the word has acquired a peculiar and appropriate meaning, it shall be construed according to such peculiar and appropriate meaning for definition. 1 Pa.C.S. § 1903(a). 'Fraud' certainly has acquired a peculiar and appropriate meaning in the law. We turn to Black's Law Dictionary 594 (5th ed. 1979) for a definition and find one that is sufficiently

7. Section 2(4)(xiv) provides that "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made" is a deceptive practice.

simple and broad to answer our purpose: '[a]ny kind of artifice employed by one person to deceive another.' *National Apartment Leasing Company*, 108 Pa.Commonwealth Ct. at 306, 529 A.2d at 1160–1161.

In a subsequent case, this Court held that allegations that a telephone company misled new telephone customers into thinking they were getting objective advice with regard to purchasing internal maintenance plans, and that the company failed to disclose material information regarding such plans, were sufficient to state a cause of action for violation of the Consumer Protection Law, and if proven, would constitute fraud. *Commonwealth v. Bell Telephone Company of Pennsylvania*, 121 Pa.Commonwealth Ct. 642, 551 A.2d 602 (1988). In *Wright v. North American Life Insurance Company*, 372 Pa.Super. 272, 539 A.2d 434 (1988) the Superior Court held that the Consumer Protection Law is broad enough to encompass claims made by plaintiffs that an insurance agent misrepresented the coverage and the schedule of premiums for the policies they had purchased.

The Chancellor concluded that Chatham "in purchasing the assets subject to the memberships, was obligated, both legally and equitably, to honor the contracts and the failure to do so was open defiance of the Court Order." (Opinion of the Chancellor, June 20, 1988, at 3.) Relying upon the definition of fraud found in 37 C.J.S. § 1,[8] the Chancellor found that Chatham's action "was a fraud, not only upon the Bankruptcy Court, but upon the consumers who were the objects of consideration of the Bankruptcy Court in directing that the sale be made subject to the existing membership contracts." *Id.* at 2. We find that the Chancellor's application of this definition went beyond the legis-

**8.** This definition states, in pertinent part:

A generic term which embraces all the multifarious means which human ingenuity can devise and are resorted to by one individual to gain an advantage over another by false suggestions or by suppression of the truth. In its general or generic sense, it comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another, or the taking of undue or unconscientious advantage of another....

37 C.J.S. § 1.

lature's intent in enacting the Consumer Protection Law and this Court's interpretation thereof. *National Apartment Leasing Company.*

By enacting the Consumer Protection Law the legislature sought to benefit the public at large by eradicating, among other things, unfair or deceptive business practices, and this law attempts to place on more equal terms seller and consumer. *Monumental Properties.* In the case *sub judice*, Chatham was not the seller of the memberships. Having acquired the Facility in a bankruptcy sale, Chatham did not participate in the original membership contracts. The bankrupt Facility and the members were the contracting parties. (Notes of Testimony, August 5, 1986, (N.T. I) at 28–29.) Not being a party to the contracts, Chatham has not deceived the members. *National Apartment Leasing Company.* The Attorney General must establish that Chatham intended to acquire the assets of the Facility by agreeing not to charge any additional fee when in fact it was Chatham's intention to charge an additional fee. It is clear that Chatham billed the members additional sums subsequent to their payment in full of their dues, but this does not constitute common law fraud under *Mancini*, nor statutory fraud under the Consumer Protection Law.

The Chancellor found that Chatham was obligated to honor the contracts without additional fees. Our review of the bankruptcy court's order [9] reveals that the order itself is the reason for this dispute and explains the Chancellor's difficulty during the preliminary injunction hearing,[10] and in its opinion, wherein the Chancellor did not make a finding of fraud on behalf of Chatham, but merely concluded: "By offering the same services to members of the former health club and *breaching the agreement as approved by the*

**9.** This order states in part: "2. The sale is subject to the terms and conditions of the Purchase Agreement, attached to the Motion as Exhibit '1.'" (U.S. Bankruptcy Court Order, November 13, 1985, at 2, Plaintiff's Exhibit 33.) The Purchase Agreement, in pertinent part, states: "Said conveyance shall be subject to memberships in the Club and the restaurant lease and said memberships and lease shall be assumed by Purchaser." (Plaintiff's Exhibit "1," RR at 323a).

**10.** *See* N.T. I at 6–12.

*Bankruptcy Court* by charging additional fees to those members, the defendant has created a chaotic situation fraught with confusion and misunderstanding." Chancellor's opinion, November 26, 1986, at 5 (emphasis added).

Judge Joseph L. Cosetti, chief bankruptcy judge in the Western District of Pennsylvania, who presided over the bankruptcy proceedings, testified at the permanent injunction hearing:

Q   So was it your understanding, then, that the purchase subject to the membership contracts meant that the memberships were to be honored by the Defendant purchaser in that members would not be required to pay any fees or dues in addition to what they were already obligated to pay for the term of their membership?

A   It assumed the memberships.   And those contracts for whatever term and quality those agreements had.   I think my understanding of the case is that the company or the debtor sold memberships with varying amounts and time.   They weren't all consistent.   I don't know what was in each of those contracts.   I have never seen one of the contracts.[11]

Notes of Testimony, May 13, 1988, (N.T. II) at 21.

Testimony indicates that Chatham operated differently than its predecessor and chose not to sell long-term memberships.  Chatham sold only monthly memberships at $40 per month.  (*See* N.T. I at 29; N.T. II at 35.)  Those members of the predecessor Facility were given full credit for all the money they paid; if a member already paid $360 for a 36–month membership, he/she would be given credit

---

**11.**  The parties agreed that the bankruptcy court would have "exclusive jurisdiction over all disputes arising pursuant to this Agreement." (*See* note 2 herein.)  Yet, at the preliminary injunction hearing the Chancellor asked counsel for the Attorney General why this matter was not back in bankruptcy court because they could best interpret "subject to."  Counsel responded:

MR. YAUGER: For my part, Your Honor, I spoke to the trustee and I spoke to Judge Cosetti's clerk.  Both of them said, We're done with it.  Don't bring it back here.  We'll throw it out.  It's a state court matter.

N.T. I at 13.

for $10 per month toward his/her current membership until the 36 months would expire. (N.T. I at 29.) Chatham argued it could not operate on less than $40 per month.

A breach of the Purchase Agreement, approved by the bankruptcy court's order, does not constitute fraud. Furthermore, Chatham's interpretation of "subject to" is just as reasonable as the Attorney General's interpretation, recognizing that Chatham wanted to avoid the financial position of the Facility, its predecessor.

The Consumer Protection Law is to be liberally construed to effectuate its intent, but we must keep in mind that its intent is the prevention of fraud. *Monumental Properties.* Section 2(4) of the Consumer Protection Law lists the seventeen definitions of "unfair or deceptive acts or practices." Unable to categorize Chatham's actions as any of the first sixteen, the Attorney General has relied upon subsection (xvii), "Engaging in any other *fraudulent* conduct which creates a likelihood of confusion or of misunderstanding (emphasis added)." Clearly, the conduct under this subsection must be fraudulent. Fraud has not been established. Accordingly, we reverse.[12]

## ORDER

AND NOW, this 28th day of June, 1989, the order of the Court of Common Pleas of Allegheny County dated August 25, 1988, at No. 6086–12416, is hereby reversed.

BARBIERI, Senior Judge.

Most respectfully I must disagree with the Majority, because I believe that the Chancellor committed no error in finding statutory fraud under the Consumer Protection Law, and, accordingly I note my dissent. I would affirm the trial Chancellor.

12. Having resolved this matter on this issue, it is unnecessary to address Chatham's other contentions.