## Lenhart v. Naccarato

*Diane Barr Quinlin,* for plaintiffs.
*Vincent A. DeFelice,* for defendants.

RODGERS,*J.,* September 27, 1990—This matter is before the court on motions for post-trial relief filed by both plaintiffs, Debra Smoke Lenhart and Randall Lenhart, her husband, and defendants, Filippo Naccarato and Nella Naccarato, t/d/b/a Filippo Beauty Salon and Hair Removal Clinic. Defendants request a new trial or judgment n.o.v. Plaintiffs request a new trial to determine whether

the Unfair Trade Practices and Consumer Protection Law should be applied in this case.

In this case, plaintiffs, Debra Smoke Lenhart and Randall Lenhart, her husband, sought money damages from defendants, Filippo Naccarato and Nella Naccarato, t/d/b/a Filippo Beauty Salon and Hair Removal Clinic, for personal injuries in the nature of scarring and disfigurement arising out of treatment of plaintiff Debra Smoke Lenhart by defendants to remove unwanted facial hair by electrolysis, beginning in May 1986 and continuing until about September 1987.

This case was tried before a jury on June 14, 15, and 18, 1990, before Judge Rodgers. The jury returned a verdict for plaintiff Debra Smoke Lenhart only in the amount of $20,000.

Defendants raise three issues in their post-trial motions. They are as follows:

(1) The trial court erred in refusing to grant defendants' motion for continuance:

(2) The trial court erred in permitting Rebecca J. Caserio, M.D. to testify as an expert witness on behalf of plaintiffs; and,

(3) The trial court erred in refusing to grant defendants' motion for withdrawal of a juror after counsel for plaintiffs made improper remarks in her closing argument.

Plaintiffs raise only one issue in their motion for post-trial relief. Plaintiffs allege that the court erred in refusing to apply the Unfair Trade Practices and Consumer Protection Law of this Commonwealth and in refusing to instruct the jury accordingly.

For the reasons hereinafter stated, the motions for post-trial relief filed by plaintiffs and defendants are denied.

Defendants claim that the court erred in refusing to grant their motion for continuance.

In March 1988 defendant Nella Naccarato began living in Italy with her husband, who is an Italian citizen.

This case was first listed on the October 1989 trial list. Two joint motions for continuance were made by the parties and granted by the court, one on October 12, 1989 and the other on November 22, 1989. The November 22 motion asserted three grounds in support of the motion for continuance, one being that defendant Nella Naccarato was not expected to return to the United States in time for the December 1989 trial term.

At the pretrial conference which was held on April 23, 1990, counsel for defendants presented a motion for continuance requesting a continuance until the September 1990 trial list stating that defendant Nella Naccarato would not be returning to the United States until September 1990 because her husband was experiencing "immigration difficulties." The trial court granted the motion, but continued the case to the June 1990 trial term, not to the September 1990 trial term, as requested by counsel.

On June 8, 1990, counsel for the parties took the telephone deposition of defendant Nella Naccarato for use at trial. During the deposition, Mrs. Naccarato stated, in response to a question from her counsel, that she did not know when she would return to the United States. (Nella Naccarato deposition at 6.)

Counsel for the defendants again made a motion for continuance on June 14, 1990 at the time this case was called for trial. The trial court denied the motion.

A continuance is discretionary and an inherent power of the trial court. *Chester Housing Authority v. Nichola,* 329 Pa. Super. 136, 477 A.2d 1391 (1984). Pa.R.C.P. 216(a)(4) also provides that under

special circumstances the court may, within its discretion, grant a continuance. The trial court clearly did not abuse its discretion in refusing defendants' motion for continuance.

Defendants did not provide a satisfactory explanation as to why Mrs. Naccarato's husband's immigration problem prevented her from returning to the United States to attend trial. In addition, Mrs. Naccarato stated that she did not know when she would be returning to the United States. Therefore, it was uncertain that a continuance of the case to the September 1990 trial list would insure Mrs. Naccarato's presence at trial. Further, Mrs. Naccarato was afforded a full opportunity to testify through her deposition, and has failed to show that she was prejudiced by the manner in which her testimony was received. Three continuances had already been granted in this case when it was called to trial.

For these reasons, the court did not err in refusing to grant defendants' motion for continuance.

Defendants also allege that the trial court erred in permitting Rebecca J. Caserio, M.D., to testify as an expert witness on behalf of the plaintiffs. Defendant raises two subissues in this regard: (a) that Dr. Caserio was not qualified to render an expert opinion in this case; and (b) that Dr. Caserio's opinion lacked the decree of certainty required to be admissible.

First, defendants argue that Dr. Caserio, who was not an electrologist, was not qualified to give an opinion in this case, therefore, her testimony was inadmissible.

Pennsylvania law imposes a liberal standard for the qualification of an expert, allowing a witness to testify as an expert if the witness has any "reasonable pretension to specialized knowledge on the subject under investigation." *Kuisis v. Baldwin-*

*Lima-Hamilton Corp.,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974). See also, *In re Glasser Bros. Inc.,* 382 Pa. Super. 177, 555 A.2d 129 (1989). Once a witness is qualified as an expert, the weight to be given to the expert's testimony is for the jury. *Kuisis,* 457 Pa. at 338, 319 A.2d at 924. The decision as to whether a witness has the required knowledge to qualify as an expert witness is within the sound discretion of the trial court. *Gottfried v. American Can Co.,* 339 Pa. Super. 403, 489 A.2d 222 (1985).

With this liberal standard in mind, Pennsylvania courts have allowed experts in one area to address other areas where specialties overlap. See, e.g., *Ragan v. Steen,* 229 Pa. Super. 515, 331 A.2d 724 (1974) (a surgeon was permitted to testify in a medical malpractice action as to causation against a radiologist where the surgeon was knowledgeable through experience as to X-ray treatments); *McDaniel v. Merck, Sharp and Dohme,* 367 Pa. Super. 600, 533 A.2d 436 (1987) (an expert witness was not required to be a hematologist in order to present opinion evidence that a particular antibiotic caused decedent's death where he was a board-certified specialist in internal medicine and infectious diseases who conducted a search of the literature on the drug and also prescribed the drug to patients).

Dr. Caserio had such a reasonable pretension to specialized knowledge. Dr. Caserio is board-certified as a medical specialist in dermatology. She is the director of the hair clinic at Falk Clinic, which is associated with the Department of Dermatology at the University of Pittsburgh, and approximately 25 percent of her practice concerns excessive facial and/or body hair growth. Although she has never performed electrolysis herself, she has studied electrolysis and studied the literature regarding electrolysis as part of her training in

dermatology. She has also seen numerous demonstrations on electrolysis and has undergone the procedure herself. In addition, Dr. Caserio employs an electrologist and has equipment in her office which is designed to remove isolated hairs.

Accordingly, given the broad standard in Pennsylvania for qualification of an expert, Dr. Caserio, as a specialist in dermatology who is familiar with electrolysis, was properly qualified as an expert. Therefore, the court did not err in allowing her to testify.

Secondly, defendants contend that Dr. Caserio's testimony was not sufficiently certain to establish the causal link between the electrolysis performed by defendants and the scarring suffered by plaintiff, Debra Smoke Lenhart.

When a party must prove causation through expert testimony the expert must testify with reasonable certainty that, in her professional opinion, the result in question came from the cause alleged. *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1977); *Kravinsky v. Glover,* 263 Pa. Super. 8, 396 A.2d 1349 (1979). It is not required that the opinion be expressed as a matter of absolute certainty. *Kravinsky v. Glover,* 263 Pa. Super. at 21-22, 396 A.2d at 1356 (1979).

Dr. Caserio testified that, in her opinion, the disfigurement and scarring of the chin of plaintiff Debra Smoke Lenhart were the results of the negligent treatment by defendants in the application of electrolysis; in that defendant Nella Naccarato used too high an electric current, or placed the needle too high, or both, causing bleeding, destruction of dermal tissue, scarring, and disfigurement. In addition, Dr. Caserio testified that the scars were not due to acne.

As stated above, an expert opinion need not be stated with absolute certainty but with reasonable certainty. Dr. Caserio opined that the injury to Debra Lenhart was caused by too high an electric current or too high a placement of the needle, or both, to the exclusion of all other possible causes. The opinion expressed by Dr. Caserio was of sufficient quality and weight to be proper evidence.

For these reasons, the trial court did not err in permitting plaintiffs to present the expert testimony of Rebecca J. Caserio, M.D.

Finally, defendants argue that the court erred in refusing to grant their motion for withdrawal of a juror when counsel for plaintiffs made improper remarks during her closing argument.

During her closing argument, counsel for plaintiffs remarked that there are no standards in Pennsylvania for the performance of electrolysis. Counsel for defendants objected and the objection was sustained by the trial court. At the conclusion of the closing arguments, counsel for defendants requested a side bar at which time a motion for withdrawal of a juror was made. This motion was denied.

The court instead gave a cautionary instruction to the jury instructing them to ignore any reference made by counsel for plaintiffs to standards of electrology in Pennsylvania.

In addition, at several points in the trial, including before closing arguments began, the court instructed the jury that the arguments of counsel are not evidence.

The matter of withdrawing a juror because of an argument of counsel is within the discretion of the trial court. *McCune v. Leamer,* 383 Pa. 437, 119 A.2d 89 (1955). Whether the trial court abused its discretion in this regard depends on the circumstances under which the statement was made and

the precautionary steps taken by the court to prevent the statements from having a prejudicial effect. Unless the impropriety of counsel's remark is gross, an admonition to the jury to disregard the remarks is sufficient, *McCune, supra.*

The prompt cautionary instruction given by the court was sufficient to cure any prejudice which may have been caused to defendants because of the remarks of plaintiffs' counsel. Under the circumstances, a grant of a new trial is not warranted. Therefore, the court did not err in refusing to grant defendants' motion for withdrawal of a juror.

Plaintiffs allege that the court erred in refusing to apply the Unfair Trade Practices and Consumer Protection Law and in refusing to charge the jury accordingly.

The complaint filed by plaintiffs alleges, in count III, that defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq. Plaintiffs alleged that after plaintiff Debra Smoke Lenhart began electrolysis treatments she began to experience bleeding, scabbing and scarring of her skin and inquired of defendant Nella Naccarato as to whether this condition was temporary or permanent. Nella Naccarato allegedly stated, on several occasions, that three to six months after plaintiff Debra Smoke Lenhart ceased electrolysis treatments her skin would be "softer than before," thereby violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq. Defendant Nella Naccarato denies making any such statements.

Plaintiffs also presented proposed jury instructions regarding the Pennsylvania Unfair Trade Practices and Consumer Protection Law. The trial court ruled that the law was inapplicable and refused to

instruct the jury accordingly. The trial court did not err in so ruling.

The objective of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq., is the prevention of fraud. In *Commonwealth v. Monumental Properties*, 459 Pa. 450, 329 A.2d 812 (1974), the Pennsylvania Supreme Court explained the purpose of the law by stating:

"The legislature sought by the Consumer Protection Law to benefit the public at large by eradicating, among other things, 'unfair and deceptive' business practices . . . Instantly, the legislature strove . . . to ensure the fairness of market transactions. No sweeping changes in legal relationships were occasioned by the Consumer Protection Law, since prevention of deception and the exploitation of unfair advantage has always been an object of remedial legislation.

"Although the Consumer Protection Law did articulate evils desired to be remedied, the statute's underlying foundation is fraud prevention. This court emphatically stated in *Verona v. Schenley Farms Co.*, 312 Pa. 57, 64, 167 A. 317, 320 (1933), '[a]s a statute for the prevention of fraud it must be liberally construed to effect the purpose. . . .'

"Since the Consumer Protection Law was in relevant part designed to thwart fraud in the statutory sense, it is to be construed liberally to effect its object of preventing unfair or deceptive practices." *Monumental*, 459 Pa. at 457-60, 329 A.2d at 815-17. (citations omitted)

Section 3 of the law, 73 P.S. §201-3, provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful." The law defines "trade" and "commerce" as "the advertising, offering for sale, sale or distribution of

any services. . .." 73 P.S. §201-2(3). When the legislature intended to exclude a class of transactions from the law, it did so by clear language. *Culbreth v. Miller Inc.,* 328 Pa. Super. 374, 477 A.2d 491 (1984).

The business of a hair removal clinic is to sell the service of hair removal to the public. Clearly, this business is within the law's definition of trade and commerce and is not expressly excluded from regulation.

The terms "unfair methods of competition" and "unfair or deceptive acts or practices" are defined in section 2(4) by a listing of 17 specific prohibited activities. 73 P.S. §201-2(4)(i)-(xvii).

Plaintiffs claim that the statements made by defendant Nella Naccarato constitute unfair and deceptive acts or practices as defined in subclauses (v), (vii) and (xvii) of section 2(4). These subclauses define unfair and deceptive acts or practices as:

"(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.

"(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

"(xvii) Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4).

Defendant's statement does not fall within any of the prohibited unfair or deceptive acts or practices defined by the act.

The alleged misrepresentation made by defendant clearly does not fall within subclauses (v) or (vii) of section 201-2(4) of the law. This statement was not a

statement regarding the characteristics of the service being provided nor was it a statement regarding the standard or quality of the services offered by defendants.

Defendant's statement also does not fall within subclause (xvii), the "catchall provision." Under this catchall provision, plaintiffs must establish that any confusion or misunderstanding created by the actor is fraudulent. *Chatham Racquet Club v. Commonwealth of Pennsylvania (Chatham I),* 116 Pa. Commw. 55, 60, 541 A.2d 51, 54 (1988). The law does not define the word "fraud."

In discussing the interpretation of the language of section 2 of the Consumer Protection Law and in holding that the law is not unconstitutionally vague, the Commonwealth Court in *Commonwealth v. National Apartment Leasing Co.,* 108 Pa. Commw. 300, 306, 529 A.2d 1157, 1160-61 (1987), stated that:

"With respect to 'fraud,' a term not defined, section 1903(a) of the Statutory Construction Act of 1972 advises that where a word is not defined in the statute but the word has acquired a peculiar and appropriate meaning, it shall be construed according to such peculiar and appropriate meaning for definition. 1 Pa.C.S. §1903(a). (Fraud) certainly has acquired a peculiar and appropriate meaning in the law. We turn to Black's Law Dictionary 594 (5th ed. 1979) for a definition and find one that is sufficiently simple and broad to answer our purpose: '[a]ny kind of artifice employed by one person to deceive another.' "

In *Chatham Racquet Club v. Commonwealth (Chatham II),* 127 Pa. Commw. 209, 561 A.2d 354 (1989), the Commonwealth Court addressed fraud by the definition given in *Chatham I* and also addressed fraud by its common-law definition as stated in *Mancini v. Morrow,* 312 Pa. Super. 192,

202, 458 A.2d 580, 584-85 (1983), citing *Shane v. Hoffman,* 227 Pa. Super. 176, 324 A.2d 532 (1974).

Under the common-law definition of *Mancini,* five elements are necessary to prove fraud. These elements are:

(1) false representation of an existing fact;

(2) if the misrepresentation is innocently, made, then it is actionable only if it relates to a matter material to the transaction involved; while if it is knowingly made or involves a non-privileged failure to disclose, materiality is not required;

(3) scienter;

(4) justifiable reliance; and

(5) damage to the person relying thereon.

The cases relied on by plaintiffs do not support their contention that the statements allegedly made by defendant, Nella Naccarato, fall within the law. *Levin v. Berkley,* 728 F.2d 551 (1984), involved a defendant, an attorney, who made misrepresentations regarding his qualifications by holding himself out as skilled in the preparations and drafting of wills. The court held that the executor of an estate had standing to raise the issue of defendant's violation of the Massachusetts Unfair Trade Practices Act. *Levin,* 728 F.2d at 556. *Pomianowski v. Merle Norman Cosmetics,* 507 F.Supp. 435 (1980), involved an action against a cosmetic manufacturer, for a mascara product that was defective and unreasonably dangerous in its design, manufacture, contents and packaging that caused personal injury to the plaintiff. The court held that while the plaintiff could not recover for personal injuries under the statute, she could recover for her non-personal injuries, if any, under her statutory cause. *Pomianowski,* 507 F.Supp. at 438. Neither of these cases dealt with a situation where the alleged violation of

the Consumer Protection Law of that state was the statement of an opinion.

Defendants rely on an Alabama case which does support their position. In *D.H. Holmes Department Store v. Feil,* 472 So.2d 1001 (1985), an electrologist made assurances to customers that their treatment for permanent removal of facial hair would be complete within one year. The Supreme Court of Alabama held that such statements were expressions of opinions and not statements of material facts which constituted fraud. *Feil,* 472 So.2d at 1004.

While the statements made by defendant, Nella Naccarato, may have been incorrect, they clearly do not rise to the level of common-law fraud as defined in *Mancini,* nor statutory fraud under the Consumer Protection Law.

It has been generally held in Pennsylvania that in order to be a basis of an action for fraud, a misrepresentation must not be a mere expression of an opinion, belief or prediction, but must be a representation of an existing fact. *Schoen v. Youshock,* 202 Pa. Super. 460, 198 A.2d 437 (1964); *Hoffman v. A.B. Chance Co.,* 339 F.Supp. 1385 (1972).

Clearly, in the case at bar, no misrepresentation of an existing fact was made by defendant. Defendant's statement was merely a statement of her opinion that the condition of plaintiff's skin would improve.

As the Pennsylvania Supreme Court stated in *Monumental Properties,* the object of the Unfair Trade Practices and Consumer Protection Law is the prevention of fraud. Fraud has not been established in this case.

For these reasons, the court's ruling that the Unfair Trade Practices and Consumer Protection

Law did not apply in this case was proper. Plaintiffs' motion for post-trial relief must be denied.

Plaintiffs have also filed a motion for delay damages pursuant to Rule 238. Defendants have failed to file a response opposing this motion within the 10-day period prescribed by 238(C)(1). Therefore, plaintiffs' motion for delay damages must be granted.

## ORDER OF COURT

And now, September 27, 1990, the motions of plaintiffs, Debra Smoke Lenhart and Randall Lenhart, her husband, and of defendants, Filippo Naccarato, Nella Naccarato and Filippo Beauty Salon and Hair Removal Clinic, for post-trial relief are denied.

The motion of plaintiff Debra Smoke Lenhart for delay damages is granted, and the prothonotary is directed to enter judgment in favor of plaintiff Debra Smoke Lenhart and against defendants, Filippo Naccarato, Nella Naccarato and Filippo Beauty Salon and Hair Removal Clinic, in the total amount of $23,396, including delay damages.