**LOUISVILLE & JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, Appellant,**

v.

**CITY OF LOUISVILLE, Appellee.**

**CITY OF LOUISVILLE, Cross-Appellant,**

v.

**LOUISVILLE & JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, Cross-Appellee.**

Court of Appeals of Kentucky.

March 6, 1970.

Edwin O. Davis, Davis & Mahan, Louisville, for appellant.

Eugene H. Alvey, Richard C. Oldham, Louisville, for appellee.

J. GREENE M. ROBINSON, Special Commissioner.

This appeal arises out of cross-claims filed by the Louisville and Jefferson County Metropolitan Sewer District (hereinafter MSD) and the City of Louisville (hereinafter the City) against each other in a personal injury action brought against both of them. The trial court held that neither has a cause of action against the other, and they both appeal.

An agreed statement of facts filed in the trial court includes the following information:

"On January 26, 1965, Rebecca L. Crew fell at 812 Broadway in Louisville, Kentucky, by stumbling over a pipe approximately six inches in diameter and protruding about four inches above the concrete sidewalk. She instituted this suit against numerous utilities, the City of Louisville (hereinafter known as the City), and the Louisville and Jefferson County Metropolitan Sewer District (hereinafter known as MSD). Mrs. Crew was enceinte at the time and suit also was maintained by the Administrator of the unborn child, who died as a result of the fall.

"After the taking of a great deal of proof, it was determined by the City and MSD that their best interests would be served by effecting settlement of the claims without prejudicing the right of each to contest its responsibility in the litigation. Accordingly, they made such an agreement and payment of $8,750 was made by the City, a like payment was made by MSD, and a payment of $500 was made on behalf of the owners of the properties contiguous with the sidewalk, for a total payment of $18,000, plus costs to that date. The payment by the property owners was

for an absolute release and without further recourse to or by it.

"This case now is before the Court solely on the question of whether the liability rests with the City only, with MSD only, or whether they are jointly liable. They are agreed that liability is one of those categories."

The case was submitted to the trial court on the above agreed statement plus the facts further set out in the agreement. The court concluded neither litigant is entitled to recover under its cross-claim against the other and rendered an "Opinion and Judgment" to that effect.

The City maintained and operated the sewer system for many decades prior to 1946. Many of the records are of old installations and incomplete. The detailed search with regard to the object in question has failed to reveal when or by whom it was installed. No one connected with MSD has ever seen a similar pipe which, incidentally, had numerous holes in the cap. The purpose of the pipe is a matter of conjecture. On excavation, it was ascertained that the six-inch pipe connected with an eight-inch horizontal pipe approximately ten feet below the surface of the sidewalk. Dye placed in the commode of the adjacent property owner found its way into the eight-inch pipe when the toilet was flushed. The origin and terminus of the eight-inch pipe, as well as the date of its construction, are unknown. It is agreed the eight-inch pipe is a part of the present sewer system serving the city, and maintained and controlled by the MSD, and for the use of which a charge is paid MSD by the property owner. Testimony established that the sidewalk surrounding the six-inch pipe was in existence at least as early as 1936; hence the pipe protruded above the sidewalk surface at least since that date. The identity and purpose of the pipe was contested by all defendants until its function was established by the excavation during this litigation.

In 1946, by reason of KRS 76.010 et seq., the City and Jefferson County were grant-

ed the right to establish a joint MSD and "a board to manage, control, and conduct the business, activities, and affairs of such district * * *." Pursuant thereto by Ordinance No. 90 of the 1946 Series, the City created such a sewer district. The sewer property owned by the City prior to Ordinance No. 90 was never transferred to MSD by a deed and there are no records of such property's being transferred except as encompassed in the statutes and ordinance referred to, but the policy and practice of MSD, with which the City concurs, has always been as stated in a bond resolution adopted by the governing board of MSD and contained in its minutes dated July 7, 1949, as follows:

"Whereas pursuant to Chapter 76 of Kentucky Revised Statutes, Louisville and Jefferson County Metropolitan Sewer District has been created and organized as a public body corporate and as a political subdivision having complete jurisdiction, control, possession and supervision of the existing sewer and drainage system in the City of Louisville, Kentucky, with the power and authority to maintain, operate, reconstruct and improve said system and made additions, betterments and extensions thereto within the limits of Jefferson County, Kentucky; the power and authority to establish and collect sewer rates, rentals and charges for the services and facilities afforded; and for any of its corporate purposes and pledge to the payment of said bonds all or any part of the revenues of said system."

MSD has acquired property from time to time since 1946 and taken title thereto in its own name. When a property right or easement is desired by an outside entity and affecting the real property of which MSD assumed operating control following Ordinance No. 90, the procedure has been that MSD personnel first will conclude the granting of such right or disposal of such property will not be detrimental to the interest of MSD, and any conveyance or real property right affecting same is obtained from the City.

MSD has from time to time raised money by the sale of bonds in its own name and in so doing has pledged the income of MSD as security for the bonds. For the purpose of such bond issues it has publicly acknowledged its authority to operate the sewer system "as a revenue producing undertaking" and that it has legal authority to operate, maintain, and control the sewer system, of which it likewise has possession.

The judgment of the trial court was entered on November 30, 1967. After reciting the respective positions and contentions of MSD and of the City, it adjudged "that each defendant is equally responsible" and dismissed the cross-claims the City and MSD had asserted against each other.

On December 13, 1967, the City filed a motion for a new trial or to amend judgment. MSD did not file a motion for a new trial or to amend the judgment.

■ The City has asked that MSD's appeal be dismissed because of its failure to file a motion for a new trial. The cases cited involved situations where the trial court had no opportunity to rule on the question or alleged error. The situation is different in this case. It was tried and decided on an agreed statement of facts and the judgment recited specifically the position and contention of each party to this appeal. A motion for a new trial by MSD would not have brought to the attention of the court for consideration any fact or contention not included in the agreed statement. The request for a dismissal on this ground is denied. CR 59.06; Clay's Kentucky Practice, CR 59.06, Comment 3.

The creation of MSD and its powers, duties, and operation are provided for in KRS Chapter 76. In KRS 76.010 it is stated that the "district under said name shall be a body corporate, and political subdivision, with power to adopt, use and alter at its pleasure a corporate seal, sue and be sued, contract and be contracted with, and

in other ways to act as a natural person, within the purview of KRS 76.010 to 76.210." KRS 76.020 provides the manner of creation, which is by ordinance of the city legislative body. Pursuant to that section the City in July of 1946 enacted such an ordinance, in which it was provided that MSD "shall exercise and discharge all the powers, privileges, rights, duties and obligations given to and imposed upon them by the said act." (Act of the General Assembly as contained in KRS 76.010 et seq.)

In the Restatement of Torts, Second, § 353, the principle of law applicable to the situation in this case is as follows:

"A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if (a) the vendee does not know or have reason to know of the condition or risk involved, and (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk."

A quotation copied in appellant's brief from Parker v. Redden, Ky., 421 S.W.2d 586, 595 (1967), is as follows:

"Our cases quite clearly establish the proposition that if the consequences that grow out of a negligently created 'condition' are natural and probable (foreseeable), the fact that negligent conduct of another person is involved does not exonerate from liability the person who negligently created the condition—his negligence is a concurring cause."

This case supports the text from Restatement but has a stronger application since it involved joint negligence, whereas in the present case the court finds no negligence on the part of MSD.

Brown Hotel Company v. Pittsburgh Fuel Company, 311 Ky. 396, 224 S.W.2d 165 (1949), places liability on "the party who was the active wrongdoer or primarily negligent."

■ The City created the hazardous condition prior to the time the operation of the sewer was transferred to MSD and maintained such condition for 29 years before the accident. The City is charged with notice of such a hazardous condition in its sidewalks, which are constantly used by the public.

The City contends that MSD is charged with notice of the condition. The statement of facts shows that MSD had no actual notice and the purpose of the six inch pipe is unknown.

■ It is not unusual in cities and towns to see iron pipes protruding above the ground in public or private property, such as pipes to abandoned service station tanks, abandoned cisterns, etc. There was nothing in this case to charge MSD with notice that this protruding pipe was any part of the sewerage facilities or served a purpose in connection therewith. After excavation no one could come up with any purpose the pipe served. The situation of MSD as to discovering if the six-inch pipe was a part of its system was well expressed in the last page of its brief:

"Certainly MSD had no duty after it took over the sewer system from the City to determine if every pipe in the City protruding from a sidewalk also connected to a sewer, particularly where the pipe did not look like part of the sewer system, actually served no known purpose of the sewer system and, as events proved, could have its nature determined only by tearing up the sidewalk and digging ten feet below the surface."

The judgment is reversed on the appeal of MSD and affirmed on the City's cross-appeal, with directions that the judgment be modified accordingly.

All concur.