**Rachael PRICE, Individually and as Parent and Next Friend of Daezsa Price,[1] an Infant; and Waedell Harris, Appellants,**

v.

**Rosa GARCIA; and Yellow Cab Co., LLC, Appellees.**

**No. 2007–CA–001344–MR.**

Court of Appeals of Kentucky.

Aug. 7, 2009.

---

1. During pretrial motions argued on the morning trial began, counsel for Rachael Price moved to voluntarily dismiss Daezsa Price from the case because she did not meet the $1,000.00 statutory threshold under Kentucky Revised Statutes (KRS) 304.39–060(2)(b). The motion was granted.

Mark Joseph Smith, Maureen Sullivan, Louisville, KY, for Appellants.

Bradley D. Harville, Louisville, KY, for Appellees.

Before NICKELL and VANMETER, Judges; GRAVES,[2] Senior Judge.

*OPINION*

NICKELL, Judge.

Rachael Price and Waedell Harris appeal from a judgment of the Jefferson Circuit Court entered on May 21, 2007, dismissing their personal injury claims with prejudice following a unanimous jury verdict in favor of Rosa Garcia and Yellow Cab Co. At the end of a three-day trial, jurors were unconvinced Price and Harris had proved they had incurred $1,000.00 in reasonably necessary medical expenses required for recovery under KRS 349.39–060(2)(b). The sole issue on appeal[3] is whether the trial court properly admitted three items of testimony from the investigating officer, Sgt. Jessie L. Browning, who was neither listed nor qualified as an expert witness. Each of the pieces of challenged testimony bore on fault, an issue not reached by the jury. We now affirm.

## I. FACTS

This appeal stems from a two-car collision that occurred around 1:55 a.m. on January 9, 1999. Garcia was driving a Caprice Classic leased from Yellow Cab. She had picked up a fare[4] at a bar in Louisville, Kentucky, and was driving him home. She was traveling east on Valley Station Road when she reached a small hill. As she traveled about halfway down the hill, her cab began sliding and slid to the bottom of the hill, where it fully blocked the roadway. Garcia testified that she had been in control of the cab until she crested the hill and had no warning the hill was a sheet of ice. Once the cab began sliding, Garcia put the car into neutral and steered into the direction of the slide to try to regain control of the vehicle.

As she tried to maneuver the taxi back into her lane, she was struck by a Honda Civic driven by Harris. Garcia testified that everything happened in a matter of seconds and that she did not see the Honda until the impact. After making certain her passenger was not injured, Garcia exited her cab and tried to check on the people in the Honda. Because of the icy roadway, Garcia could not stand when she got out of her cab but finally made her way to the Honda by holding on to the cars. Price and Harris ignored Garcia when she asked whether they needed help, so Garcia returned to her cab and waited for police to arrive. Sgt. Browning arrived within minutes of receiving the dispatch and closed the roadway until it was salted.

The Honda that hit the cab was owned by Price. She and her one-year-old

---

**2.** Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

**3.** This is not the first time these litigants have come before this Court. In *Price v. Garcia,* 2005–CA–000562–MR, 2006 WL 1360822 (rendered May 19, 2006, not to be published), a panel of this Court reversed a trial court order dismissing the complaint for lack of prosecution and remanded the case for reinstatement of Price's and Harris's claims.

**4.** Garcia's passenger did not testify at trial, nor was he deposed.

daughter, Daesza, were passengers in the vehicle. Daesza was strapped into a car seat in the backseat of the Honda. The driver's left front bumper and quarter-panel of the Honda struck the right rear passenger door and quarter-panel of the taxi.

At trial, Harris testified that he was also traveling east on Valley Station Road at about fifteen miles per hour. He said it was snowing, there was snow on the side of the road, he did not recall any ice, and he did not recall the Honda sliding on ice. As he crested the hill, he saw a taxi at the bottom, completely blocking the roadway. Harris said he hit his brakes in an attempt to avoid colliding with the cab but the accident was unavoidable.

Harris's recollection was different during a pretrial deposition at which he testified that the roads were not bad when he, Price and her baby began their trip, but they were "real bad" as he drove down Valley Station Road. Harris stated he was driving slowly because the roads were getting icy. He had even turned off the radio so he could concentrate on the road. As he crested the hill, he saw the taxi blocking the road at the bottom of the hill. When he hit his brakes, the Honda slid. Harris surmised the cab had just slid too. Defense counsel impeached Harris at trial by reading portions of his deposition to the jury.

Harris worked for Beechmont Press at the time of the collision. He did not miss any work because of the impact. His forehead bled and he complained of neck and low back injuries. Harris went by ambulance to the hospital but he was not billed for the ride. His hospital bill was $44.94. Harris was treated by a chiropractor, Dr. Thomas Jacques, D.C., between January 1999 and July 1999. His bill for chiropractic treatment was $4,950.00.

At the time of trial in May 2007, Price was a physical rehabilitation nurse. However, at the time of the collision in January 1999, she was an emergency medical technician in the employ of Yellow EMS and Jefferson County EMS. She testified that Harris was driving her car at the time of the accident. They were traveling on Valley Station Road, came over a hill, and within seconds hit a taxi. From her perspective, the accident was unavoidable. On cross-examination at trial, Price said she could not say whether the roads were slick because she was not driving and she did not attempt to walk on the road after the collision. She testified that they had no trouble on the road until the moment of impact.

Like Harris, Price had more to say during her deposition, portions of which defense counsel read to the jury for impeachment purposes. Price said Harris was driving slowly, fifteen to twenty miles per hour, because the roads were becoming slippery; but until the accident, they did not realize the roads were slick.

Price testified at trial that EMS workers placed her on a spine board at the scene and drove her to the hospital by ambulance where she spent the night. She stated she had whiplash as well as shoulder, neck and back pain. She was also treated by Dr. Jacques for several months, primarily for neck pain. Price testified that her EMS bill was $167.16; her hospital bill was $430.73; and her bill from Dr. Jacques was $4,860.00.

Dr. Jacques testified about his treatment of both Price and Harris. Of specific relevance to Price, Dr. Jacques testified that Price suffers from scoliosis, which was not attributable to the collision. He also stated that Price would have been injured even if she had been wearing a seatbelt at the time of impact, but her injuries may have been reduced by a seatbelt.

Johnny Mansfield, a supervisor and thirty-three-year employee of Yellow Cab, was the only other witness called on behalf of Price/Harris. Mansfield investigated the collision and photographed the scene. After receiving word of the collision, it took him about one hour and fifteen minutes to reach the accident site. Upon arriving, he deemed Valley Station Road to be impassable and described it as being coated with what he estimated to be a one-quarter inch thick sheet of ice. Without any objection, Mansfield testified that it was still raining when he arrived at the accident scene and that he had to walk sideways or hold on to something to actually reach the vehicles. The cab and the Honda had not been moved when he arrived, so the photos he took showed the vehicles at their final resting places. Mansfield noticed other cars were off the road too. Salt trucks arrived while Mansfield was at the scene.

The focus of this appeal is the admissibility of the testimony from Sgt. Browning, the only witness called by the defense. Sgt. Browning investigated the collision. She has sixteen-years' experience in law enforcement, having served eleven of them in Kentucky. She was formerly with the Jefferson County Police Department and at the time of trial was employed by the Louisville Metro Police Department. Sgt. Browning served as a patrol officer for approximately nine years. Her assignment at the time of trial was teaching officers to train police recruits.

Price/Harris objected to Sgt. Browning testifying about road conditions since she did not see the accident happen and her testimony would be prejudicial because the roadway had worsened after the accident. Characterizing Sgt. Browning as a contemporaneous fact witness, the court overruled the objection and allowed the officer to testify that the roads were icy and that

there was a solid sheet of ice on the grass when she arrived at the scene within seven minutes of the collision. Much of this testimony was cumulative of facts already established by Price, Harris and Garcia. Sgt. Browning went on to state she had heard announcements on local radio stations throughout her shift warning of dropping temperatures, of freezing rain, and predicted icing of roadways. She also remembered black ice on the road and being unable to stand on a flat surface at the scene without her feet sliding. Sgt. Browning described the scene that night as "incredibly treacherous for pedestrian and vehicular traffic[,]" and she did not recall having ever seen conditions that bad.

Next, Price/Harris objected to Sgt. Browning identifying the point of impact because she had not been listed as a defense expert under CR[5] 26.02. Sgt. Browning had testified she was trained to document the point of impact. Garcia/Yellow Cab responded that Sgt. Browning's testimony did not rise to the level one would expect an accident reconstructionist to give. The court overruled the objection because Sgt. Browning was not giving expert testimony, and she had not been asked to do so. The court did, however, sustain the objection to reconstruction questions without the laying of a proper foundation. The court went on to say that it would allow some latitude in questioning Sgt. Browning because of her experience. Thereafter, defense counsel asked the officer, based on her police report and photos of the scene, whether the Honda appeared to have been angled following the impact. Sgt. Browning testified that the Honda appeared to have been traveling somewhat "canted" or angled and that the cab appeared to be fully blocking one lane. She also testified that the Honda's contact with

---

5. Kentucky Rules of Civil Procedure.

the cab appeared to be "glancing" rather than a direct hit. The point of impact, as estimated by Sgt. Browning on her report, was consistent with the damage to the vehicles as shown on the photos taken by Mansfield. It was also consistent with Garcia's testimony that the Honda bounced on impact and slid to its resting place shown in the photos.

Next, Sgt. Browning described how she had removed Daezsa from the backseat of the Honda and carried her to Price, who was sitting in a nearby ambulance. Sgt. Browning stated she had two officers, one on either side of her, walk with her to the ambulance. Because the road was slick and the ambulance was not parked immediately beside the Honda, Sgt. Browning directed the officers to catch the baby should she fall. Several minutes after this testimony, Price/Harris objected to the description about how the baby was moved as being irrelevant. The court overruled the objection noting counsel had allowed several minutes to elapse before voicing his objection. Although not mentioned by the trial court, defense counsel had described, without objection, the transfer of the baby from the Honda to the ambulance during opening statement. In overruling the objection during Sgt. Browning's testimony, the trial court stated the officer's description may have been prejudicial to the plaintiff's case but being prejudicial did not make it inadmissible. Thereafter, the court directed defense counsel to move on to another topic; it also declined to admonish the jury to disregard the testimony because an improper question had not been asked and, therefore, there was no legal basis for an admonition.

Thereafter, Sgt. Browning testified that it was not possible to get traction on either the road or the grass. She called for salt trucks and closed the road until the trucks arrived. Sgt. Browning cleared the scene

around 3:35 a.m., after the road had been salted.

On the third day of trial, jurors were instructed on the law of the case. Following closing argument by both parties, the case was submitted to the jury at 10:53 a.m. By 11:16 a.m., the trial court had been advised the jury had reached a verdict. Jurors unanimously answered "No" to the following question for Price: without regard to fault, "[a]re you satisfied from the evidence that the Plaintiff, Rachael Price, incurred medical expenses for the reasonable charges for reasonably needed products, services, and accommodations, including those for medical care, physical rehabilitation, and other remedial treatment and care, exceeding" $1,000.00 as a result of the collision. Jurors reached the same verdict on the same instruction for Harris. Having found neither Price nor Harris satisfied the statutory threshold required for recovery, jurors went no further in their deliberations, and the trial court entered an order dismissing the claim with prejudice under CR 41.01(2). Price/Harris filed a notice of appeal to this Court on July 2, 2007. We affirm.

## II. PRESERVATION

■ Before reaching the substance of the appeal, we consider the claim of Garcia/Yellow Cab that the appeal is not properly before us because Price/Harris did not file a timely motion for a new trial as discussed in *Ligon Specialized Hauler, Inc. v. Smith,* 691 S.W.2d 902 (Ky.App. 1985). We disagree. In *Ligon,* an allegation of juror misconduct was not raised in a new trial motion and apparently was not alleged at trial. Therefore, nothing was preserved for the appellate court to review. Throughout the case *sub judice,* counsel for Price/Harris went to extreme lengths to preserve the current claims for our review. Thus, the trial court had am-

ple opportunity to rule upon the complaints raised by Price/Harris. While CR 59.01 sets forth the grounds for seeking a new trial, it must be considered in tandem with CR 59.06 which reads:

> [a]llegations of error, otherwise properly preserved, in respect to rulings, orders, or instructions of the court need not be presented in a motion for a new trial in order to be preserved for appellate review.

*See also Louisville and Jefferson County Metropolitan Sewer Dist. v. City of Louisville*, 451 S.W.2d 172, 174 (Ky.1970) (motion for new trial unnecessary where court has ruled on all matters); *Payne v. Hall*, 423 S.W.2d 530 (Ky.1968) (trial court must have opportunity to rule on issue presented by new trial motion before appellate court may review claim). Because the circuit court ruled during trial on the issues advanced in this appeal, the purpose of preservation (giving the trial court an opportunity to rule on alleged errors) was satisfied. Thus, we reject the nonpreservation argument advanced by Garcia/Yellow Cab and will review the three allegations of error raised by Price/Harris.

## III. STANDARD OF REVIEW

■ We review a trial court's evidentiary rulings for an abuse of discretion. *See Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky.2000). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). Under KRE [6] 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, even

relevant evidence, pursuant to KRE 403, "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Garcia/Yellow Cab did not list Sgt. Browning as an expert witness under CR 26.02(4). However, a witness need not be classified as an expert to give her opinions so long as they are rationally based on her perceptions, helpful to understand her testimony and determine a fact, and are "[n]ot based on scientific, technical, or other specialized knowledge[.]" *See* KRE 701.

## IV. ANALYSIS

### A. Police officer testimony about weather conditions

■ Sgt. Browning's testimony about weather conditions was admissible. In *Butts v. Wright*, 418 S.W.2d 653, 655 (Ky. 1967), an officer was permitted to testify about "light and weather conditions at the time he received a call reporting the accident and he also testified concerning light and the weather after he arrived at the scene of the accident. He did not attempt to testify as to what the light and weather conditions were at the scene of the accident at the time it occurred." Just as admitting the officer's testimony was permissible in *Butts*, the same holds true in the case at bar. On cross-examination, Sgt. Browning testified that she did not know the condition of the roads at the moment of impact. She also confirmed she was not a weather expert and stated there was a point during the evening when road conditions changed rapidly. Sgt. Browning testified only to the weather as she saw it that night: the temperature had dropped, ice covered both the road and the grass when she arrived at the accident

**6.** Kentucky Rules of Evidence.

scene, and the weather made for the most treacherous driving conditions she had seen. Sgt. Browning's testimony was consistent with that given by Garcia at trial and in her deposition as well as the photos taken by Mansfield. It was also consistent with the deposition testimony given by Price and Garcia. These facts were well within Sgt. Browning's perception of the scene. Thus, the trial court did not abuse its discretion in permitting her to testify about the weather conditions on the night of the accident.

### B. Police officer testimony about point of impact

■ Price/Harris's next allegation is that it was improper for defense counsel to ask Sgt. Browning to speculate on how the vehicles may have collided to produce the damage reflected in the photos since she was not an accident reconstructionist and she was not listed or offered as a defense expert. A police officer may testify about the point of impact only upon being qualified as an expert in accident investigation, supporting his/her conclusions with physical evidence, disclosing those facts to the jury, and not basing his/her opinion on assumptions. *Alexander v. Swearer*, 642 S.W.2d 896, 897 (Ky.1982) (citations omitted).

Harris testified that the Honda was headed straight down the road and did not slide as he descended the hill. To rebut that testimony, defense counsel asked Sgt. Browning which portion of the Honda was damaged. Based upon the photos taken at the scene and the report she had prepared, she stated the damage appeared to be to the left front quarter-panel and side of the Honda, rather than the front of the Honda. Defense counsel then asked, "[i]f the Honda was going straight down the road, would you expect the damage to be across the front?" This question drew an objec-

tion from counsel for Price/Harris because Sgt. Browning is not an expert in accident reconstruction and was not offered as an expert witness. Defense counsel pointed out that the question had not been answered and argued it did not rise to the level of testimony one would expect from an accident reconstructionist. The court stated it did not believe the scope of Sgt. Browning's testimony was that of an expert and therefore would not strike the testimony, admonish the jury, or declare a mistrial. While the court stated it would allow some leeway due to the officer's experience, it barred Sgt. Browning from giving any "reconstruction" testimony. Thereafter, defense counsel rephrased his question and asked Sgt. Browning whether she could tell from her police report and the photos if the Honda was at an angle, to which she testified that the Honda was somewhat angled and that the cab was more severely angled and completely blocking one lane of traffic. Based on the photos, she further testified that the Honda appeared to have had only "glancing" contact with the cab rather than making a "direct" hit with the cab. This was consistent with Garcia's testimony since she had stated the Honda bounced off the cab after the impact. Thus, Sgt. Browning's testimony was nothing more than an oral description of the damage depicted in the photos of the accident scene. In light of the cumulative nature of the challenged testimony, we hold the trial court did not abuse its discretion in admitting Sgt. Browning's testimony. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705 (Ky. 2009).

### C. Police officer testimony about moving Daesza

■ Finally, Price/Harris contends the trial court erred in allowing Sgt. Browning to relate how she had asked two emergency workers to assist her in carrying Price's

one-year-old daughter from the Honda to an ambulance. She stated that because of the ice-covered roads and grass, it was difficult to gain enough traction to walk on either. As a result, she asked two officers to walk on either side of her, instructing them that, should she fall, she would hold the baby up, and they should catch the baby to keep her safe. Price/Harris objected, requested an admonition, and moved for a mistrial after the officer made the statements. Price/Harris argued they were prejudiced by the harrowing story and it dashed their hopes of winning on the merits. The prejudice, they claim, far outweighed any probative value of the statements.

Despite any prejudice that may have occurred, Garcia and Yellow Cab characterize this contention as harmless error, and we agree. CR 61.01 states in relevant part, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Even if these two minutes of testimony (out of a three-day trial) qualified as unduly prejudicial, the testimony related largely to the issue of fault and to whether Garcia's actions fell short of her duty to exercise ordinary care for the safety of others using the roadway. Fault was not an issue considered by jurors in reaching their unanimous decision. The jury's decision rested entirely on a lack of faith in Price/Harris's proposed reasonable medical expenses.

Therefore, this aspect of the appeal, like the preceding issues, is moot. The testimony of Sgt. Browning as to the weather, the point of impact, and the carrying of the child to the ambulance all bore on the lack of Garcia's fault. Reversal is unjustified since jurors would have reached the same outcome regardless of the challenged testimony.

For the foregoing reasons, we affirm the judgment of the Jefferson Circuit Court.

ALL CONCUR.